**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Remnant Oil Company, LLC and | § | Case No. 19-70106 |
| Remnant Oil Operating, LLC, | § | Case No. 19-70107 |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |
| | § | (Jointly Administrated under |
| | § | Case No. 19-70106) |

## DEBTORS' PLAN OF REORGANIZATION

**LOEB & LOEB LLP**
Bernard R. Given II
State Bar No. 07990180
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120
Telephone:  310-282-2000
Facsimile:  310-282-2200
Email:  bgiven@loeb.com

-and-

Daniel B. Besikof (admitted *pro hac vice*)
Bethany D. Simmons (admitted *pro hac vice*)
345 Park Avenue
New York, NY 10154
Telephone:  212-407-4000
Facsimile:  212-407-4990
Email:   dbesikof@loeb.com
        bsimmons@loeb.com

*Counsel for Debtors*
*and Debtors in Possession*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ......................................................................1

I.      DEFINITIONS AND RULES OF INTERPRETATION ....................................................1

     1.1    Definitions.................................................................................1
     1.2    Rules of Interpretation ........................................................1
     1.3    Computation of Time ..........................................................2

II.     ADMINISTRATIVE, DIP AND PRIORITY TAX CLAIMS .........................................2

     2.1    Administrative Claims .......................................................2
     2.2    Bar Date for Administrative Claims .................................2
     2.3    Fee Claims ...........................................................................3
     2.4    DIP Claims...........................................................................3
     2.5    Priority Tax Claims............................................................3

III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................4

     3.1    General Rules of Classification .........................................4
     3.2    Classified Claims and Interests.........................................4
     3.3    Class 1: Priority Non-Tax Claims.....................................4

          3.3.1  Classification.........................................................4
          3.3.2  Treatment ..............................................................4

     3.4    Class 2: Secured Priority Tax Claims ...............................5

          3.4.1  Classification.........................................................5
          3.4.2  Treatment ..............................................................5

     3.5    Class 3: Allowed Secured FirstCapital Claim ......................6

          3.5.1  Classification.........................................................6
          3.5.2  Treatment ..............................................................6

     3.6    Class 4: Allowed Secured 3-2-1 Claim.............................6

          3.6.1  Classification.........................................................6
          3.6.2  Treatment ..............................................................6

     3.7    Class 5: Allowed Secured M&M Lien Claims ......................6

          3.7.1  Classification.........................................................6
          3.7.2  Treatment ..............................................................6

# TABLE OF CONTENTS CONTINUED

**Page**

3.8     Class 6:  Other Secured Claims .................................................................7

     3.8.1   Classification..................................................................7
     3.8.2   Treatment ........................................................................7

3.9     Class 7: General Unsecured Claims..........................................................7

     3.9.1   Classification..................................................................7
     3.9.2   Treatment ........................................................................7

3.10    Class 8:  Insider General Unsecured Claims............................................7

     3.10.1  Classification..................................................................7
     3.10.2  Treatment ........................................................................7

3.11    Class 9:  Interests ...................................................................................8

     3.11.1  Classification..................................................................8
     3.11.2  Treatment ........................................................................8

3.12    Vacant Classes .......................................................................................8
3.13    Insurance ................................................................................................8
3.14    Special Provision Governing Unimpaired Claims....................................8
3.15    Priority Available Cash...........................................................................8

IV.   MEANS FOR IMPLEMENTATION ...........................................................9

4.1     Survival of ROC and ROO .....................................................................9
4.2     Vesting of Assets ....................................................................................9
4.3     Preservation of Causes of Action............................................................9

     4.3.1   Maintenance of Causes of Action ..............................9

4.4     Preservation of All Causes of Action Not Expressly Settled or Released.............10
4.5     Cash Reserve..........................................................................................10
4.6     Amendment of Company Agreements....................................................10
4.7     The Liquidating Trust ...........................................................................10

     4.7.1   Appointment of  Liquidating Trustee .......................10
     4.7.2   Creation of Liquidating Trust ...................................10
     4.7.3   Beneficiaries of Liquidating Trust ...........................11
     4.7.4   Powers and Duties of Liquidating Trustee................11
     4.7.5   Costs and Expenses of Administration of Liquidating Trust.....................11
     4.7.6   Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations...........................................11

## TABLE OF CONTENTS CONTINUED

**Page**

4.7.7   Liquidating Trust Assets Treated as Owned by Liquidating
Trust Beneficiaries ................................................................................11
4.7.8   Term of Liquidating Trust ........................................................................12

4.8      The Plan Administration Committee ....................................................................12

4.8.1   Creation of Plan Administration Committee ............................................12
4.8.2   Procedures ...............................................................................................12
4.8.3   Function ...................................................................................................12
4.8.4   Duration ...................................................................................................13
4.8.5   Compensation and Expenses....................................................................13
4.8.6   Retention of Professionals .......................................................................14
4.8.7   Liability; Indemnification ........................................................................14

4.9      Managers and Officers..........................................................................................14
4.10     Company Authorization.........................................................................................15
4.11     Effectuating Documents and Further Transactions................................................15
4.12     Authority to Object and Settle Disputed Claims ..................................................15
4.13     Provisions to invoke cramdown proceedings, if necessary ...................................15

V.       EXECUTORY CONTRACTS AND LEASES ....................................................................15

5.1      Assumption of Executory Contracts and Unexpired Leases...................................15
5.2      Cure of Defaults; Assignment of Executory Contracts and Unexpired
Leases....................................................................................................................16
5.3      Rejection of Executory Contracts and Unexpired Leases......................................17
5.4      Claims on Account of the Rejection of Executory Contracts and
Unexpired Leases...................................................................................................18
5.5      Extension of Time to Assume or Reject .................................................................18
5.6      Treatment of Certain Insurance Policies................................................................18

VI.      PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ........................................................................................................18

6.1      Resolution of Disputed Claims ..............................................................................18

6.1.1   Allowance of Claims.................................................................................18
6.1.2   Prosecution of Objections to Claims.........................................................19
6.1.3   Claims Estimation....................................................................................19
6.1.4   Deadline to File Objections to Claims.......................................................19

6.2      No Distributions Pending Allowance .....................................................................19
6.3      Distributions on Account of Disputed Claims Once They Are Allowed
and Additional Distributions on Account of Previously Allowed Claims.............19
6.4      Disputed Claims Reserve.......................................................................................20

VII.     PROVISIONS GOVERNING DISTRIBUTIONS ..............................................................20

# TABLE OF CONTENTS CONTINUED

| | | | |
|---|---|---|---|
| 7.1 | Distributions for Claims Allowed as of the Effective Date | | 20 |
| 7.2 | No Post-Petition Interest on Claims | | 20 |
| 7.3 | Delivery and Distributions; Undeliverable or Unclaimed Distributions | | 20 |
| | 7.3.1 | Delivery of Distributions in General | 20 |
| | 7.3.2 | Minimum Distributions | 20 |
| | 7.3.3 | Undeliverable Distributions | 21 |
| 7.4 | Compliance with Tax Requirements | | 21 |

VIII. CONDITIONS PRECEDENT .................................................... 22

| | | |
|---|---|---|
| 8.1 | Conditions to Confirmation | 22 |
| 8.2 | Conditions to the Effective Date | 22 |
| 8.3 | Effect of Non-Occurrence of the Conditions to the Effective Date | 22 |

IX. DISCHARGE, INJUNCTION AND RELATED PROVISIONS ................. 22

| | | |
|---|---|---|
| 9.1 | Discharge of Claims | 22 |
| 9.2 | Exculpation | 23 |
| 9.3 | Injunction | 24 |
| 9.4 | Binding Nature of Plan | 24 |
| 9.5 | Protection Against Discriminatory Treatment | 24 |

X. RETENTION OF JURISDICTION ................................................ 25

| | | |
|---|---|---|
| 10.1 | Jurisdiction | 25 |

XI. MISCELLANEOUS PROVISIONS ............................................... 26

| | | |
|---|---|---|
| 11.1 | Dissolution of the Creditors' Committee | 26 |
| 11.2 | Payment of Statutory Fees | 26 |
| 11.3 | Modification of Plan | 27 |
| 11.4 | Revocation or Withdrawal of Plan | 27 |
| 11.5 | Service of Documents | 27 |
| 11.6 | Exemption from Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code | 28 |
| 11.7 | Votes Solicited in Good Faith | 28 |
| 11.8 | Closing of Chapter 11 Cases | 28 |
| 11.9 | Conflicts | 28 |
| 11.10 | Substantial Consummation | 28 |

EXHIBIT A - DEFINITIONS ............................................................... i

## INTRODUCTION AND SUMMARY

Remnant Oil Company, LLC and Remnant Oil Operating, LLC, the debtors and debtors-in-possession in the above-captioned cases (the "**Debtors**" or "**Plan Proponents**") propose this Debtors' Plan of Reorganization (as it may be amended, modified or supplemented from time to time, together with all exhibits annexed hereto or referenced herein, the "**Plan**") for the resolution and satisfaction of all Claims against and interests in the Debtors.  All capitalized terms not defined in this introduction have the meanings ascribed to them in Article I of this Plan.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, resolution of material disputes, significant Asset sales, financial projections for the liquidation of certain of the Debtors' remaining Assets and a summary and analysis of the Plan and certain related matters.  All parties entitled to vote on the Plan should review the Disclosure Statement and the terms of the Plan before voting to accept or reject the Plan.  In addition, there may be other agreements and documents that may be filed as part of the Plan.  No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Federal Bankruptcy Rule 3019, the Plan Proponents expressly reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its Confirmation.

## I.
## DEFINITIONS AND RULES OF INTERPRETATION

1.1  **Definitions**.  Capitalized terms used herein shall have the meanings set forth in **Exhibit A**.

1.2  **Rules of Interpretation**.  For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter genders; (c) any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (d) any reference in the Plan to an existing document or an exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (e) unless otherwise specified, all references in the Plan to articles, sections, clauses and exhibits are references to articles, sections, clauses and exhibits of or to the Plan; (f) the words "herein" and "hereto," and other words of similar import, refer to this Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) any reference to an Entity or Person as a holder of a Claim or Interest includes that Person's successors, assigns and Affiliates; (i) the rules of construction set forth in Bankruptcy Code section 102 shall apply to the extent such rules are not inconsistent with any other provision in this section; (j) any term used herein that is not defined herein shall have the meaning ascribed thereto in the Bankruptcy Code and/or the Bankruptcy Rules, if used therein; (k) in the event of any ambiguity or conflict between the Plan and the Disclosure Statement, the provisions of the Plan shall govern; and (l) any reference to the

"Liquidating Trustee" shall be deemed to include a reference to the "Liquidating Trust" and any reference to the "Liquidating Trust" shall be deemed to include a reference to the "Liquidating Trustee" unless the context otherwise requires.

      1.3    **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## II.
## ADMINISTRATIVE, DIP AND PRIORITY TAX CLAIMS

      2.1    **Administrative Claims.**  Except as otherwise provided in this Article II, the legal, equitable and contractual rights of the holders of Allowed Administrative Claims are unaltered by this Plan.  Subject to the other terms and conditions of this Article II, on the later of the Effective Date or the date on which an Administrative Claim becomes an Allowed Administrative Claim, or, in each such case, as soon as practicable thereafter, each holder of an Allowed Administrative Claim (other than an Allowed Fee Claim) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the holder of such Allowed Administrative Claim shall have agreed upon in writing; *provided*, *however*, that Administrative Claims incurred by Debtors or Reorganized Debtors in the ordinary course of business may be paid in the ordinary course of business by such applicable Debtor or Reorganized Debtor in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  No members of the Creditors' Committee will be seeking substantial contribution fees, legal fees, or expenses, with the exception of travel out-of-pocket expenses to be reimbursed.

      2.2    **Bar Date for Administrative Claims**.  Except as otherwise provided in section 503(b)(1)(D) of the Bankruptcy Code, unless previously filed or paid, requests for payment of Administrative Claims must be filed and served on the Reorganized Debtors and Liquidating Trustee, pursuant to the procedures specified in the Confirmation Order by no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from asserting such Administrative Claims against the Debtors, the Reorganized Debtors, the Reorganized Debtors' Assets, the Estates, the Liquidating Trustee, the Liquidating Trust, the Liquidating Trust Assets ,and such Administrative Claims shall be deemed discharged as of the Effective Date.  All such Administrative Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Section 9.3 hereof.

      Objections to such payment requests must be filed and served on the Reorganized Debtors, the Liquidating Trustee,  and the requesting party by the later of (a) sixty (60) days after the Administrative Claims Bar Date and (b) sixty (60) days after the filing of the applicable request for payment of Administrative Claims, if applicable, as the same may be modified or extended from time to time by Final Order of the Bankruptcy Court.

2.3 **Fee Claims.** Professionals or other Entities asserting a Fee Claim for services rendered before the Effective Date must file and serve on the Reorganized Debtors, Liquidating Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than the Fee Claims Bar Date; provided that the Reorganized Debtors shall pay Professionals retained by the Debtors or Reorganized Debtors, in the ordinary course of business for any work performed after the Effective Date, including those reasonable and documented fees and expenses incurred by such Professionals in connection with the implementation and consummation of this Plan, in each case without further application or notice to or order of the Bankruptcy Court.

Objections to any Fee Claim must be filed and served on the Reorganized Debtors, the Liquidating Trustee and the requesting party by no later than twenty-one (21) days after the filing of the applicable final request for payment of the Fee Claim.

Each holder of an Allowed Fee Claim shall be (i) paid in full in Cash from the Administrative and Fee Claims Reserve within ten (10) Business Days after entry of the order approving such Allowed Fee Claim or (ii) will receive such other less favorable treatment as to which Reorganized Debtors and the holder of such Allowed Fee Claim shall have agreed upon in writing.

2.4 **DIP Claims**. On the Effective Date, each holder of a DIP Claim will receive (or shall have previously received), in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) Cash equal to the amount of such DIP Claim; or (ii) such other less favorable treatment as to which Reorganized Debtors and the holder of such DIP Claim shall have agreed upon in writing.

2.5 **Priority Tax Claims.** The legal, equitable and contractual rights of the holders of Allowed Priority Tax Claims are unaltered by this Plan. On, or as soon as reasonably practicable after, the later of (i) ninety (90) days following the Effective Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Reorganized Debtors: (A) Cash equal to the amount of such Allowed Priority Tax Claim (to the extent there is sufficient Available Cash to make such payment); (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the holder of such Allowed Priority Tax Claim shall have agreed upon in writing; or (C) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Debtors or Reorganized Debtors, as applicable, ;provided, however, that Priority Tax Claims incurred by Debtors or Reorganized Debtors in the ordinary course of business may be paid in the ordinary course of business by Reorganized Debtors in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court. Any installment payments to be made

under clause (C) above shall be made in equal quarterly payments beginning on the last Business Day of the month following the end of each calendar quarter after the Effective Date, and continuing thereafter until payment in full of the applicable Allowed Priority Tax Claim.

## III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1 **General Rules of Classification**. A Claim or interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date. A Claim may be bifurcated and classified in other Classes to the extent that any portion of the Claim falls within the description of such other Classes.

3.2 **Classified Claims and Interests**. The Claims against and interests in the Debtor have been classified as follows:

| Class | Claim | Status | Voting Rights |
| --- | --- | --- | --- |
| Class 1 | Allowed Priority Non-Tax Claims | Impaired | Entitled to Vote |
| Class 2 | Allowed Secured Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Allowed Secured FirstCapital Claim | Impaired | Entitled to Vote |
| Class 4 | Allowed Secured 3-2-1 Claim | Impaired | Entitled to Vote |
| Class 5 | Allowed Secured M&M Lien Claims | Impaired | Entitled to Vote |
| Class 6 | Allowed Other Secured Claims | Impaired | Entitled to Vote |
| Class 7 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |
| Class 8 | Allowed Insider General Unsecured Claims | Impaired | Entitled to Vote |
| Class 9 | Interests | Unimpaired | Not Entitled to Vote |

3.3 **Class 1: Priority Non-Tax Claims**.

3.3.1 **Classification**. Class 1 consists of all Allowed Priority Non-Tax Claims. Class 1 is Impaired by the Plan and the holders of Allowed Priority Non-Tax Claims are deemed entitled to vote on the Plan.

3.3.2 **Treatment**. On, or as soon as reasonably practicable after, the later of (i) sixty (60) days following the Effective Date if such Priority Non-Tax Claim is an Allowed Priority Non-Tax Claim as of that date or (ii) sixty (60) days following the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, each holder of an

Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Non-Tax Claim, at the election of the Reorganized Debtors: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim, payable without interest in quarterly installments over a three-year period; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing; or (C) such other treatment such that it will not be Impaired pursuant to section 1124 of the Bankruptcy Code; *provided*, *however*, that Class 1 Claims incurred by Debtors or Reorganized Debtors in the ordinary course of business may be paid in the ordinary course of business by Debtors or Reorganized Debtors, as applicable, in accordance with the terms and conditions of any agreements relating thereto without further notice to or order of the Bankruptcy Court.  Any installment payments to be made under clause (A) above shall be made in equal quarterly Cash payments beginning on the first Available Cash Determination Date, and continuing on each subsequent Available Cash Determination Date thereafter until payment in full of the applicable Allowed Secured Priority Non-Tax Claim.

3.4    **Class 2: Secured Priority Tax Claims**.

3.4.1    **Classification.**  Class 2 consists of the Allowed Secured Priority Tax Claims.  Class 2 is Unimpaired by the Plan and the holders of Allowed Secured Priority Tax Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

3.4.2    **Treatment**.  On, or as soon as reasonably practicable after, the later of (i) sixty (60) days following the Effective Date, if such Secured Priority Tax Claim is an Allowed Secured Priority Tax Claim as of that date, or (ii) as soon as is reasonably practicable after the date such Secured Priority Tax Claim becomes an Allowed Secured Priority Tax Claim, each holder of an Allowed Secured Priority Tax Claim shall receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Secured Priority Tax Claim, at the election of the Reorganized Debtors: (A) Cash equal to the amount of such Allowed Secured Priority Tax Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors, as applicable, and the holder of such Allowed Secured Priority Tax Claim shall have agreed upon in writing; (C) the Collateral securing such Allowed Secured Priority Tax Claim; (D) such other treatment such that it will not be Impaired pursuant to section 1124 of the Bankruptcy Code; or (E) pursuant to and in accordance with sections 1129(a)(9)(C) and 1129(a)(9)(D) of the Bankruptcy Code, Cash in an aggregate amount of such Allowed Secured Priority Tax Claim payable in regular installment payments over a period ending not more than five (5) years after the Petition Date, plus simple interest at the rate required by applicable non-bankruptcy law on any outstanding balance from the Effective Date, or such lesser rate as is agreed to in writing by a particular taxing authority and the Reorganized Debtor..  Any installment payments to be made under clause (D) or (E) above shall be made in equal quarterly Cash payments beginning on the first Available Cash Determination Date, and continuing on each subsequent Available Cash Determination Date thereafter until payment in full of the applicable Allowed Secured Priority Tax Claim.

3.5    **Class 3:  Allowed Secured FirstCapital Claim**.

      3.5.1    **Classification**.  Class 3 consists of the Allowed Secured FirstCapital Claim.  Class 3 is Impaired by the Plan and the holder of the Allowed Secured FirstCapital Claim is entitled to vote on the Plan.

      3.5.2    **Treatment**.  The Allowed Secured FirstCapital Claim shall accrue interest at the rate of five percent (5%) per annum from the Effective Date.  If the property securing the Allowed Secured FirstCapital Claim is sold, the holder of the Allowed Secured FirstCapital Claim shall be entitled to payment of such Claim from the sale proceeds.  Otherwise, the holder of such Allowed Secured FirstCapital Claim shall be paid in full in Cash in sixty (60) equal monthly installments of principal and interest.  Each installment shall be due on the last Business Day of the month following the date that the Claim is determined to be an Allowed Secured FirstCapital Claim.  Payment of the Allowed Secured FirstCapital Claim shall be secured by the FirstCapital Collateral.  The holder of the Allowed FirstCapital Claim shall be entitled to assert a Class 7 General Unsecured Claim for any Deficiency Claim.

3.6    **Class 4:  Allowed Secured 3-2-1 Claim**.

      3.6.1    **Classification.**  Class 4 shall consist of the holder of the Allowed Secured 3-2-1 Claim.  Class 4 is Impaired by the Plan and the holder of the Allowed Secured 3-2-1 Claim is entitled to vote on the Plan.

      3.6.2    **Treatment.**  The Allowed Secured 3-2-1 Claims shall accrue interest at the rate of five percent (5%) per annum from the Effective Date and shall be paid in full in Cash in sixty (60) equal monthly installments of principal and interest.  Each installment shall be due on the last Business Day of the month following the date that the Claim is determined to be an Allowed Secured 3-2-1 Claim.  Payment of the Allowed Secured 3-2-1 Claim shall be secured by the North Square Lake Unit and any other Assets held by the Reorganized Debtors on the Effective Date that secured the Secured 3-2-1 Claim prior to the Petition Date.

3.7    **Class 5:  Allowed Secured M&M Lien Claims**.

      3.7.1    **Classification.**  Class 5 shall consist of the holders of Allowed Secured M&M Lien Claims.  Class 5 is Impaired by the Plan and the holders of the Allowed Secured M&M Lien Claims are entitled to vote on the Plan.

      3.7.2    **Treatment.**  Allowed Secured M&M Lien Claims shall accrue interest at the rate of five percent (5%) per annum from the Effective Date.  If the property securing an Allowed Secured M&M Lien Claim is sold, the holder of the Allowed Secured M&M Lien Claim shall be entitled to payment of such Claim from the sale proceeds.  Otherwise, the holder of such Allowed Secured M&M Lien Claim shall be paid in full in Cash in twenty (20) equal quarterly installments of principal and interest.  Each installment shall be due on the last Business Day of the month following the end of each calendar quarter following the date that the Claim is determined to be an Allowed Secured M&M Lien Claim.  Payment of each Allowed Secured M&M Lien Claim shall be secured by the applicable M&M Lien.  Each holder of an Allowed M&M Lien Claim shall be entitled to assert a Class 7 General Unsecured Claim for any Deficiency Claim.

3.8 **Class 6:  Other Secured Claims**.

    3.8.1 **Classification**.  Class 6 consists of Allowed Other Secured Claims.  Class 6 consists of separate subclasses for each Allowed Other Secured Claim that may exist against the Debtors.  Class 6 is Impaired by the Plan and the holders of Allowed Other Secured Claims are entitled to vote on the Plan.

    3.8.2 **Treatment**.  Allowed Other Secured Claims shall accrue interest at the rate of five percent (5%) per annum from the Effective Date.  If the property securing an Allowed Other Secured Claim is sold, the holder of the Allowed Other Secured Claim shall be entitled to payment of such Claim from the sale proceeds.  Otherwise, the holder of such Allowed Other Secured Claim shall be paid in full in Cash in twenty (20) equal quarterly installments of principal and interest.  Each installment shall be due on the last Business Day of the month following the end of each calendar quarter following the date that the Claim is determined to be an Allowed Other Secured Claim.  Payment of each Allowed Other Secured Claim shall be secured by the applicable collateral securing such Claim.  Each holder of an Allowed Other Secured Claim shall be entitled to assert a Class 7 General Unsecured Claim for any Deficiency Claim.

3.9 **Class 7: General Unsecured Claims**.

    3.9.1 **Classification.**  Class 7 shall consist of all Allowed General Unsecured Claims.  Class 7 is Impaired by the Plan and the holders of Allowed General Unsecured Claims are entitled to vote on the Plan.

    3.9.2 **Treatment**.  Subject to the terms herein, each holder of an Allowed General Unsecured Claim, in full satisfaction, settlement and release of and in exchange for all such Allowed General Unsecured Claims, shall (i) be entitled to receive, a Pro Rata share of Distributions of Available Cash from Reorganized Debtors within thirty (30) days of each Available Cash Determination Date until such Allowed General Unsecured Claim is paid in full, and (ii) own a Pro Rata beneficial interest in the Liquidating Trust Assets.  In the event that Available Cash as of the Available Cash Determination Date is less than $50,000, Reorganized Debtors may defer the Distributions.  In no event shall a holder of an Allowed General Unsecured Claim be entitled to collect any amount above the amount of such Allowed General Unsecured Claim. For the avoidance of doubt, the holder of an Allowed General Unsecured Claim may collect both Distributions of Available Cash and distributions of Liquidating Trust Assets, but only until such Allowed General Unsecured Claim is paid in full. At that time, the holder's Allowed General Unsecured Claim will be fully satisfied and released and the holder's beneficial interest in the Liquidating Trust Assets shall terminate.

3.10 **Class 8:  Insider General Unsecured Claims**.

    3.10.1 **Classification**.  Class 8 shall consist of all Allowed Insider General Unsecured Claims.  Class 8 is Impaired by the Plan and the holders of Allowed Insider General Unsecured Claims are entitled to vote on the Plan.

    3.10.2 **Treatment**.  Subject to the terms herein, no holder of an Allowed Insider General Unsecured Claim shall be entitled to any distribution on account of such Allowed Claim

until each other holder of an Allowed Claim has been paid in full. Once each other holder of an Allowed Claim has been paid in full, holders of Allowed Insider General Unsecured Claims shall be entitled to a Pro Rata Distribution of Available Cash on the Available Cash Determination Date or such other treatment as may be agreed upon by such holder of an Allowed Insider General Unsecured Claim and the Reorganized Debtors.

3.11  **Class 9:  Interests**.

3.11.1  **Classification**. Class 9 shall consists of all ROC Interests and ROO Interests. Class 9 is Unimpaired by the Plan and the holders of ROC Interests and ROO Interests are not entitled to vote on the Plan.

3.11.2  **Treatment**. All Holders of ROC Interests and ROO Interests shall retain their Interests. Until all holders of Allowed Claims in Classes 2 through 8 have received the Distributions to which they are entitled to under in Sections 3.03 and 3.10 of this Plan, the Reorganized Debtors may not cause or permit Reorganized Debtors to: (a) declare or pay any dividends, purchase, redeem, retire, defease or otherwise acquire for value the Interests now or hereafter outstanding; or (b) make any distribution of assets, Interests, obligations or securities to its members. Nothing in this Section shall restrict Reorganized Debtors from paying reasonable salaries and benefits to officers or employees of Reorganized Debtors or reimbursing officers or employees of Reorganized Debtors for ordinary and reasonable business expenses incurred on behalf of Reorganized Debtors.

3.12  **Vacant Classes**. Any Class of Claims that does not have a holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and shall be presumed to have accepted the Plan.

3.13  **Insurance**. Notwithstanding anything to the contrary herein, if any Allowed Claim is covered by insurance, such Claim shall first be paid from such insurance with the balance, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

3.14  **Special Provision Governing Unimpaired Claims.** Except as otherwise provided herein, nothing under this Plan shall affect Reorganized Debtors' rights and defenses in respect of any Claim that is Unimpaired under this Plan, including, without limitation, all rights in respect of (1) legal and equitable defenses to, (2) setoff or recoupment against, or (3) counter-claims with respect to any such Unimpaired Claims.

3.15  **Priority Available Cash.** Notwithstanding anything to the contrary in this Plan, all payments from Available Cash at any given Available Cash Determination Date shall be subject to the following priorities, to satisfy the following Plan obligations in the following order: any payments then due and owing under the Plan at such Available Cash Determination Date with respect to (1) Administrative and Fee Claims (2) Priority Tax Claims; (3) Class 1 Claims; (4) Class 2 Claims; (5) Class 3 Claims; (6) Class 4 Claims, (7) Class 5 Claims, (8) Class 6 Claims, and (9) Class 7 Claims.  As long as all then-current deferred or installment payments at any given Available Cash Determination Date are made to higher priority classes, Available

Cash can be irrevocably distributed in accordance with the preceding priorities to lower priority classes.

# IV.
# MEANS FOR IMPLEMENTATION

4.1 **Survival of ROC and ROO**.  ROC and ROO will, as Reorganized Debtors, continue to exist after the Effective Date as limited liability companies with all the powers of a limited liability company pursuant to applicable law and the Company Agreement Amendments.

4.2 **Vesting of Assets**.  Except as otherwise expressly provided in this Plan, the Confirmation Order, or any Plan Document, pursuant to sections 1123(a)(5), 1123(b)(3), 1141(b) and (c) and other applicable provisions of the Bankruptcy Code, on and after the Effective Date, with the exception of the Liquidating Trust Assets, all property and Assets of the Estates of the Debtors, and any other Assets or property acquired by the Debtors or the Reorganized Debtors during the Chapter 11 Cases or under or in connection with this Plan shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, and other encumbrances, subject to the Plan Documents.  On and after the Effective Date, the Reorganized Debtors may (i) operate their respective business, (ii) use, acquire, and dispose of their respective property, and (iii) compromise or settle any Claims, in each case without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

Reorganized Debtors will utilize the Assets, including available proceeds of the sale of assets to make the Initial Capital Expenditure.  In addition, to the extent not sold as of the Effective Date, Reorganized Debtors will continue to operate the oil and gas interests which will be assigned to the Liquidating Trust until such time as the Liquidating Trustee is able to market and sell such oil and gas lease interests.

It is the intent of this Plan to have the Debtors' current NOLs, loss carry-forwards, and/or other tax attributes survive throughout the life of the Plan.  The Debtors' NOLs, loss carry-forwards, and/or other tax attributes will be retained by the Reorganized Debtors.

All intercompany claims between the Debtors as of the Effective Date shall be deemed waived.

4.3 **Preservation of Causes of Action**.

4.3.1 **Maintenance of Causes of Action.**  Except as otherwise provided in this Article IV or elsewhere in this Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors shall assign all rights to commence, pursue, litigate or settle, as appropriate, any and all applicable Causes of Action and Avoidance Actions, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases to the Liquidating Trust. The Liquidating Trust shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of its applicable Causes of

Action and Avoidance Actions not otherwise transferred without notice to or approval from the Bankruptcy Court.

4.4 **Preservation of All Causes of Action Not Expressly Settled or Released.** All Causes of Action and Avoidance Actions are reserved for later adjudication by the Liquidating Trust (including, without limitation, Causes of Action and Avoidance Actions not specifically identified or of which the Plan Proponents may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Plan Proponents at this time or facts or circumstances that may change or be different from those the Plan Proponents now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action or Avoidance Actions upon or after the Confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except in each case where such Causes of Action or Avoidance Actions have been expressly waived, relinquished, released, compromised or settled in this Plan (including, without limitation, and for the avoidance of doubt, the Release contained in Article IX and Exculpation contained in Article IX hereof) or any other Final Order (including, without limitation, the DIP Orders or the Confirmation Order). In addition, the Liquidating Trust is expressly reserved the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

4.5 **Cash Reserve.** On the Effective Date, the Reorganized Debtors shall fund a cash reserve of $100,000 to help fund post-Effective Date expenses of the Liquidating Trustee and the Liquidating Trust. These funds shall be used to compensate counsel to the Liquidating Trustee (and for operations to the extent the fees of counsel to the Liquidating Trustee do not exceed $100,000.00) and shall not be considered available cash for Distribution. To the extent any portion of the cash reserve is not expended, the remainder shall re-vest in the Reorganized Debtors.

4.6 **Amendment of Company Agreements.** On the Effective Date, the ROC and ROO company agreements shall be amended as provided in the Company Agreement Amendments.

4.7 **The Liquidating Trust**.

4.7.1 **Appointment of Liquidating Trustee**. _____ shall be the initial Liquidating Trustee. Any successor shall be selected by the Plan Administration Committee. The Liquidating Trustee may be terminated and replaced with or without cause by the Plan Administration Committee.

4.7.2 **Creation of Liquidating Trust**. On the Effective Date, each holder of an Allowed General Unsecured Claim will (i) gain a Pro Rata beneficial interest in the Liquidating Trust estate, and (ii) be deemed to have ratified and become bound by the terms of the Liquidating Trust Agreement. On the Effective Date, the Liquidating Trustee shall sign the Liquidating Trust Agreement and accept the Liquidating Trust Assets. The Liquidating Trust will be deemed created and effective without any further action by the Bankruptcy Court or any

party. The Liquidating Trust shall be established for the primary purpose of (i) holding the Debtors' rights and interests in the Wind Farm Leases and Non-Caprock Assets until the sale of such assets can be completed, (ii) the prosecution of litigation, including but not limited to, Avoidance Actions, and (iii) for making Distributions in accordance with the Liquidating Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. On the Effective Date, all Causes of Action and Avoidance Actions shall be assigned to the Liquidating Trust.

4.7.3 **Beneficiaries of Liquidating Trust**. The holders of Allowed General Unsecured Claims shall be beneficiaries of the Liquidating Trust. The holders of Allowed General Unsecured Claims shall be bound by the Liquidating Trust Agreement. The interests of the holders of Allowed General Unsecured Claims in the Liquidating Trust shall be uncertificated and shall be nontransferable except upon death of the interest holder or by operation of law.

4.7.4 **Powers and Duties of Liquidating Trustee.** The Liquidating Trustee shall have the power and duties set forth in the Liquidating Trust Agreement.

4.7.5 **Costs and Expenses of Administration of Liquidating Trust.** Should the Liquidating Trustee find it in the best interest of the Liquidating Trust Beneficiaries to pursue any and all Causes of Action of the Debtors, including Avoidance Actions, that exist on the Effective Date of the Plan, the Liquidating Trustee shall be required to engage a law firm on a contingency fee basis to take such action. All other reasonable costs and expenses of administering the Liquidating Trust shall be the responsibility of and paid by Reorganized Debtors, subject to the then-effective Available Cash Budget, and only if the cash reserve established by section 4.5 is exhausted.

4.7.6 **Federal Income Tax Treatment of the Liquidating Trust for the Liquidating Trust Assets; Tax Reporting and Tax Payment Obligations.** For U.S. federal income tax purposes, it is intended that the Liquidating Trust be classified as a liquidating trust under Treasury Regulation section 301.7701-4. Accordingly, for U.S. federal income tax purposes, it is intended that the Liquidating Trust Beneficiaries be treated as if they had received a Distribution from the Estates of an undivided interest in each of the Liquidating Trust Assets (to the extent of the value of their respective share therein) and then contributed such interests to the Liquidating Trust.

4.7.7 **Liquidating Trust Assets Treated as Owned by Liquidating Trust Beneficiaries.** For all U.S. federal income tax purposes, all parties shall treat the transfer of Liquidating Trust Assets (net of any applicable liabilities) to the Liquidating Trust for the benefit of the Allowed General Unsecured Claims as (a) a transfer by the Debtors of the Liquidating Trust Assets (net of any applicable liabilities) directly to the holders of Allowed General Unsecured Claims (to the extent of the value of their respective share in the applicable Liquidating Trust Assets), followed by (b) the transfer of the Liquidating Trust Assets (net of any applicable liabilities) by the holders of Allowed General Unsecured Claims (to the extent of the value of their respective share in the Liquidating Trust Assets) to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. Accordingly, for U.S. federal

income tax purposes, the Liquidating Trust (except with respect to the Disputed Claims Reserve associated therewith) shall be treated as a grantor trust, and the Allowed General Unsecured Claims shall be treated as the grantors of the Liquidating Trust and the owners of the Liquidating Trust Assets.

4.7.8  **Term of Liquidating Trust**.  The Liquidating Trustee shall be discharged and the Liquidating Trust shall be terminated, at such time as: (i) all Disputed Claims have been resolved; (ii) all Assets of the Liquidating Trust have been liquidated; (iii) all duties and obligations of the Liquidating Trustee under the Liquidating Trust Agreement have been fulfilled and (iv) all Distributions required to be made by the Liquidating Trust under the Plan and the Liquidating Trust Agreement have been made; *provided, however*, that in no event shall the Liquidating Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

4.8  **The Plan Administration Committee**.

4.8.1  **Creation of Plan Administration Committee.**  On the Effective Date, the Plan Administration Committee shall be formed and constituted and shall consist of the following persons or employees of the following entities:

> Kendall Atkins for Precision Pump and Supply
> Tony Pennington for Alliance Well Service LLC
> Jeffrey Botz for Twin Stars Compression, LLC

In the event that a Plan Administration Committee member sells, transfers or assigns any right to or interest in its Allowed General Unsecured Claim, said member shall be immediately removed. The remaining Plan Administration Committee members will elect a replacement member.

4.8.2  **Procedures**.  The Plan Administration Committee shall adopt bylaws which shall provide for the governance of the Plan Administration Committee.

4.8.3  **Function**.  The Plan Administration Committee shall have the following powers and responsibilities:

a.  The Plan Administration Committee shall monitor Reorganized Debtors and the Liquidating Trustee in the performance of their obligations under the Plan.

b.  The Plan Administration Committee shall be responsible for the termination, selection and replacement of the Liquidating Trustee.

c.  The Plan Administration Committee shall review and either approve or reject in its discretion, not to be unreasonably withheld, the:

(1)     six (6) month Available Cash Budgets to the extent they vary from the Financial Projections by more than 10% in the aggregate;

(2)     proposals by Reorganized Debtors to borrow money or grant liens;

(3)     proposals by Reorganized Debtors to sell Assets with a value in excess of $25,000;

(4)     proposals by Reorganized Debtors to postpone the scheduled date of a Distribution to holders of Allowed General Unsecured Claims;

(5)     proposals by the Liquidating Trustee with respect to initiation and prosecution of litigation;

(6)     proposals by the Liquidating Trustee with respect to disposition and settlement of any Cause of Action or Avoidance Action; and

(7)     proposals by the Reorganized Debtors with respect to resolution of any Disputed Claim over $50,000.

d.     The Plan Administration Committee shall have such other powers and responsibilities as set forth in the Plan or the Liquidating Trust Agreement.

e.     A Plan Administration Committee member shall recuse itself from participation in decision making by the Plan Administration Committee on matters in which there is a conflict of interest.

4.8.4    **Duration.**  The Plan Administration Committee shall remain in existence until such time as the final Distributions to Allowed General Unsecured Claims under the Plan have been made by Reorganized Debtors and the Liquidating Trustee.

4.8.5    **Compensation and Expenses.**  The compensation structure for the Plan Administration Committee is as follows:

a.     Payment of an hourly rate of $200 for attendance at meetings of the Plan Administration Committee;

b.     Three (3) teleconference meetings for maximum allotted time of three (3) hours per meeting and one in-person meeting at a maximum of eight (8) hours, for a total four (4) regularly scheduled meetings annually or a total of approximately $3,400 maximum annual compensation for attendance at meetings of the Plan Administration Committee;

c.     Subject to the Confirmation Order and any other Final Order of the Bankruptcy Court, members of the Plan Administration Committee shall not be entitled

to reimbursement of any expenses incurred in carrying out their duties as members of the Plan Administration Committee, with the exception of reasonable travel expenses; and

        d.      The Plan Administration Committee shall be allowed to hold two (2) emergency meetings per year for a maximum allotted time of three (3) hours per meeting or an additional $1,200 annual compensation, subject to exigent circumstances justifying the necessity of such emergency meeting.

        4.8.6   **Retention of Professionals.**  The Plan Administration Committee shall have the right to retain the services of attorneys which, in the discretion of the Plan Administration Committee, are necessary to assist the Plan Administration Committee in the performance of its duties.  The fees and expenses of such attorneys shall be paid by Reorganized Debtors upon the monthly submission of bills to Reorganized Debtors and the Plan Administration Committee, unless, within seven (7) calendar days of receipt of the invoice to which an objection relates, the Reorganized Debtors provide notice to the Plan Administration Committee and its counsel of such objection and describes with particularity the items or categories of fees, costs, and expenses that are the subject of the objection.  The payment of the fees and expenses of the Plan Administration Committee's retained attorneys shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided, however,* that objections to such fees that cannot be resolved may be filed with the Bankruptcy Court and set for a hearing.

        4.8.7   **Liability; Indemnification.**  Neither the Plan Administration Committee, nor any of its members, designees, or professionals, nor any duly designated agent or representative of the Plan Administration Committee, or their respective employees, shall be liable for the act or omission of any other member, designee, agent, or representative of the Plan Administration Committee, nor shall any member be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Plan Administration Committee, other than acts or omissions resulting from such member's willful misconduct or gross negligence.  The Plan Administration Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with counsel and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such counsel.  Notwithstanding such authority, the Plan Administration Committee shall be under no obligation to consult with counsel and its determination to not do so shall not result in the imposition of liability on the Plan Administration Committee, or its members and/or designees, unless such determination is based on willful misconduct or gross negligence.  Reorganized Debtors shall indemnify and hold harmless the Plan Administration Committee and its members, designees, and professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than as a result of their willful misconduct or gross negligence, with respect to Reorganized Debtor or the implementation or administration of the Plan.

       4.9   **Managers and Officers**.  From and after the Effective Date, the current managers and officers of the Debtors shall continue in their current roles.

4.10    **Company Authorization**.  On the Effective Date, all matters provided for under this Plan that would otherwise require approval of the members or managers of the Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date, without any requirement of further action by the members or managers of the Debtors.

4.11    **Effectuating Documents and Further Transactions**.  On the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other actions as may be reasonably necessary to effectuate and further evidence the terms and conditions of the Plan.

4.12    **Authority to Object to and Settle Disputed Claims.**  From and after the Effective Date, the Reorganized Debtors shall be authorized with respect to those Claims which are not Allowed Claims hereunder or by Final Order, (i) to object to, and seek estimation of, any Claims filed against, and (ii) pursuant to Bankruptcy Rule 9019(b) and section 105(a) of the Bankruptcy Code, to compromise and settle Disputed Claims, in the ordinary course of business and without further notice to or order of the Bankruptcy Court.  For any proposed compromise or settlement of a Disputed Claim over $50,000, the Reorganized Debtor shall consult with the Plan Administration Committee.

4.13    **Provisions to invoke cramdown proceedings, if necessary.**  If all of the applicable requirements of Section 1129(a) of the Bankruptcy Code are met other than subparagraph 8 of said such section (which requires that all impaired Classes accept the Plan), the Plan Proponents will then seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code, which is commonly referred to as the "cram-down" provision.  For purposes of seeking Confirmation under the cram-down provision of the Bankruptcy Code, if that alternative means of Confirmation proves to be necessary, the Plan Proponents reserve the right to modify or vary the terms of the Plan with regard to the Allowed Claims of any rejecting classes, so as to comply with the requirements of Section 1129(b).

**V.**
**EXECUTORY CONTRACTS AND LEASES**

5.1    **Assumption of Executory Contracts and Unexpired Leases.**  On the Effective Date, all executory contracts and unexpired leases of the Debtors will be assumed by the Reorganized Debtors in accordance with, and subject to, the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, except for those executory contracts and unexpired leases that:

(i)      have been assumed or rejected by prior order of the Bankruptcy Court;

(ii)     are the subject of a motion to reject pending on the Effective Date;

(iii)    are identified in the Plan Documents as being rejected; or

(iv)    are rejected or terminated pursuant to the terms of this Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any executory contract or unexpired lease, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

To the extent any provision in any executory contract or unexpired lease assumed or assumed and assigned (as applicable) pursuant to this Plan (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (i) the commencement of the Chapter 11 Cases or the insolvency or financial condition of Debtors at any time before the closing of the Chapter 11 Cases, (ii) Debtors or Reorganized Debtors' assumption or assumption and assignment (as applicable) of such executory contract or unexpired lease, or (iii) the Confirmation of this Plan, then such provision shall be deemed modified such that the transactions contemplated by this Plan shall not entitle the non-debtor party thereto to modify or terminate such executory contract or unexpired lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Each executory contract and unexpired lease assumed and/or assigned pursuant to this Plan shall revest in and be fully enforceable by the Reorganized Debtors or the applicable assignee, including the Liquidating Trustee where applicable, in accordance with its terms and conditions, except as modified by the provisions of this Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by Debtors that such contract or lease is an executory contract or unexpired lease or that Debtors have any liability thereunder.

5.2 **Cure of Defaults; Assignment of Executory Contracts and Unexpired Leases.** Any defaults under each executory contract and unexpired lease to be assumed, or assumed and assigned, pursuant to this Plan shall be satisfied, pursuant to and to the extent required by section 365(b)(1) of the Bankruptcy Code, by payment of the applicable default amount in Cash on the Effective Date or on such other terms as the Bankruptcy Court may order or the parties to such executory contracts or unexpired leases may otherwise agree in writing (the "**Cure Claim Amount**").

In the event of an assumption, or an assumption and assignment, of an executory contract or unexpired lease under this Plan, at least fourteen (14) days prior to the Confirmation Hearing, the Plan Proponents shall file and serve upon counterparties to such executory contracts and unexpired leases, a notice of the proposed assumption, or proposed assumption and assignment, which will: (a) list the applicable Cure Claim Amount, if any; (b) if applicable, identify the party to which the executory contract or unexpired lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court.

Any objection by a counterparty to an executory contract or unexpired lease to a proposed assumption, or proposed assumption and assignment, or any related cure amount must

be filed, served and actually received by the Plan Proponents at least three (3) days prior to the Confirmation Hearing (notwithstanding anything in the Schedules or a Proof of Claim to the contrary).  Any non-Debtor party to an executory contract or unexpired lease that fails to object timely to the proposed assumption, or proposed assumption and assignment, or cure amount will be deemed to have consented to such matters and will be deemed to have forever released and waived any objection to such proposed assumption, proposed assumption and assignment, and cure amount.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving each proposed assumption, or proposed assumption and assignment, of executory contracts and unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of a Debtor or assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or assumed and assigned, or (c) any other matter pertaining to assumption or assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving such assumption, or assumption and assignment.  If such objection is sustained by Final Order of the Bankruptcy Court, the Reorganized Debtors may elect to reject such executory contract or unexpired lease in lieu of assuming or assigning it.  The Reorganized Debtors shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within ten (10) days of the entry of such Final Order.

Subject to any cure claims filed with respect thereto, assumption or assumption and assignment of any executory contract or unexpired lease pursuant to this Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption or assumption and assignment, in each case as provided in section 365 of the Bankruptcy Code. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed or assumed and assigned by Final Order shall be deemed disallowed and expunged (subject to any cure claims filed with respect thereto), without further notice to or action, order, or approval of the Bankruptcy Court.

With respect to any executory contract or unexpired lease assumed and assigned pursuant to this Plan, upon and as of the Effective Date, the applicable assignee shall be deemed to be substituted as a party thereto for the Debtor party to such assigned executory contract or unexpired lease and, accordingly, the Debtors and the Reorganized Debtors shall be relieved, pursuant to and to the extent set forth in section 365(k) of the Bankruptcy Code, from any further liability under such assigned executory contract or unexpired lease.

5.3    **Rejection of Executory Contracts and Unexpired Leases.**  The Plan Proponents reserve the right, at any time prior to the Effective Date, except as otherwise specifically provided herein, to seek to reject any contract or lease to which a Debtor is a party and to file a motion requesting authorization for the rejection of any such contract or lease.  The

Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejections described in this Article V pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.  Rejection of any executory contract or unexpired lease pursuant to this Plan or otherwise shall not constitute a termination of any preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such executory contracts or unexpired leases.

5.4    **Claims on Account of the Rejection of Executory Contracts and Unexpired Leases.**  All Proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, pursuant to this Plan or the Confirmation Order, if any, must be filed with the Bankruptcy Court within twenty-eight (28) days after the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.

Any Entity that is required to file a Proof of Claim arising from the rejection of an executory contract or an unexpired lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, the Assets, the Liquidating Trust, the Liquidating Trustee, and the Liquidating Trust Assets, and the Debtors, the Reorganized Debtors and their Estates and Assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX hereof.  To the extent applicable, the limitations imposed by section 502 of the Bankruptcy Code shall apply to the relevant rejection Claim, including, without limitation, subsection 502(b)(6) and subsection 502(b)(7) thereof.

5.5    **Extension of Time to Assume or Reject.**  Notwithstanding anything to the contrary set forth in Article V of this Plan, in the event of a dispute as to whether a contract is executory or a lease is unexpired, the right of the Reorganized Debtors to move to assume or reject such contract or lease shall be extended until the date that is fourteen (14) days after entry of a Final Order by the Bankruptcy Court determining that the contract is executory or the lease is unexpired.  The deemed assumption provided for in Article V of this Plan shall not apply to any such contract or lease, and any such contract or lease shall be assumed or rejected only upon motion of the Reorganized Debtors following the Bankruptcy Court's determination that the contract is executory or the lease is unexpired.

5.6    **Treatment of Certain Insurance Policies**.  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that cover claims against the Debtors or any other Person, subject to the occurrence of the Effective Date.

## VI.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS

6.1    **Resolution of Disputed Claims**.

6.1.1    **Allowance of Claims.**  After the Effective Date, the Reorganized Debtors shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim, including, without limitation, the right to assert any objection to Claims

based on the limitations imposed by section 502 of the Bankruptcy Code. The Reorganized Debtors may contest the amount and validity of any Disputed Claim or contingent or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced or in the Bankruptcy Court.

6.1.2  **Prosecution of Objections to Claims**. After the Effective Date, the Reorganized Debtors shall have the exclusive authority to file objections to Claims and settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in an Unimpaired Class or otherwise; provided, however, this provision shall not apply to Professional Fee Claims, which may be objected to by any party-in-interest in these Chapter 11 Cases. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court, subject to the approval rights of the Plan Administration Committee for Disputed Claims over $50,000.

6.1.3  **Claims Estimation.** After the Effective Date, the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Disputed Claim or contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claims, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation.

6.1.4  **Deadline to File Objections to Claims.** Any objections to Claims shall be filed by no later than the Claims Objection Deadline; provided that nothing contained herein shall limit the Reorganized Debtors' right to object to Claims, if any, filed or amended after the Claims Objection Deadline. Moreover, notwithstanding the expiration of the Claims Objection Deadline, the Reorganized Debtors shall continue to have the right to amend any claims objections and to file and prosecute supplemental objections and counterclaims to a Disputed Claim until such Disputed Claim is or becomes an Allowed Claim pursuant to Final Order of the Bankruptcy Court.

6.2  **No Distributions Pending Allowance.** Notwithstanding any other provision of this Plan to the contrary, no payments or Distributions of any kind or nature shall be made with respect to all or any portion of a Claim or a Disputed Claim unless and until all objections to such Claim or Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Claim or Disputed Claim has become an Allowed Claim pursuant to a Final Order.

6.3  **Distributions on Account of Disputed Claims Once They Are Allowed and Additional Distributions on Account of Previously Allowed Claims.** On each Available Cash Determination Date (or such earlier date as determined by the Reorganized Debtors in their sole discretion), the Reorganized Debtors will make Distributions (a) on account of any Claim or

Disputed Claim that has become an Allowed Claim during the preceding calendar quarter, and (b) on account of previously Allowed Claims of property that would have been distributed to the holders of such Claim on the dates Distributions previously were made to holders of Allowed Claims in such Class had the Disputed Claims that have become Allowed Claims or Disallowed Claims by Final Order of the Bankruptcy Court been allowed or disallowed, as applicable, on such dates.  Such Distributions will be made pursuant to the applicable provisions of Article VII of this Plan.

      6.4    **Disputed Claims Reserve.**  The Reorganized Debtors shall establish the Disputed Claims Reserve.  The Disputed Claims Reserve shall equal (i) an amount of Cash equal to 100% of Distributions and (ii) 100% of the Pro Rata beneficial interest in the Liquidating Trust Assets, in each case to which holders of such Disputed Claims in each applicable Class would be entitled (if at all) under this Plan as of such date if such Disputed Claims were Allowed Claims in their respective Face Amount (or based on the Debtors' books and records if the applicable holder has not yet filed a Proof of Claim and the applicable Bar Date has not yet expired); provided, however, that the Reorganized Debtors shall have the right to file a motion seeking to estimate any Disputed Claims in accordance with Section 6.1.3 above.

# VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

      7.1    **Distributions for Claims Allowed as of the Effective Date.**  Except as otherwise provided, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made in accordance with Section 7.3.  Any payment or Distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.  Distributions on account of Disputed Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Section 6.3 hereof.

      7.2    **No Post-Petition Interest on Claims.**  Unless otherwise specifically provided for in this Plan, the Confirmation Order or Final Order of the Bankruptcy Court, or required by applicable bankruptcy law (including, without limitation, as required pursuant to section 506(b) or section 511 of the Bankruptcy Code), post-petition interest shall not accrue or be paid on any Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

      7.3    **Delivery and Distributions; Undeliverable or Unclaimed Distributions**.

      7.3.1    **Delivery of Distributions in General.**  The Reorganized Debtors shall make Distributions to holders of Allowed Claims, or in care of their authorized agents, as appropriate, at the address for each such holder or agent as indicated on the Reorganized Debtors' books and records as of the date of any such Distribution; provided that the address for each holder of an Allowed Claim shall be deemed to be the address set forth in the latest Proof of Claim filed by such holder pursuant to Bankruptcy Rule 3001 as of the Distribution Date.

      7.3.2    **Minimum Distributions.**  Notwithstanding anything herein to the contrary, no interim Distribution shall be made on account of an Allowed Claim that is Impaired

under this Plan if the amount of the Distribution is less than $25.00, unless such Distribution is a final Distribution.

### 7.3.3  **Undeliverable Distributions**.

a.  Holding of Certain Undeliverable Distributions.  If the Distribution to any holder of an Allowed Claim is returned to the Reorganized Debtors as undeliverable or is otherwise unclaimed, no further Distributions shall be made to such holder unless and until the Reorganized Debtors are notified in writing of such holder's then current address, at which time all currently due but missed Distributions shall be made to such holder.  Undeliverable Distributions shall remain in the possession of the Reorganized Debtors until such time as any such Distributions become deliverable.  Undeliverable Distributions shall not be entitled to any additional interest, dividends or other accruals of any kind on account of the Distribution being undeliverable.

b.  Failure to Claim Undeliverable Distributions.  Any holder of an Allowed Claim (or any successor or assignee claiming by, through, or on behalf of, such holder) that does not assert a right pursuant to this Plan for an undeliverable or unclaimed Distribution within one hundred eighty days (180) days of the date such Distribution is due shall be deemed to have forfeited its rights for such undeliverable or unclaimed Distribution and any and all future Distributions, and shall be forever barred and enjoined from asserting any such rights for an undeliverable or unclaimed Distribution against the Reorganized Debtors, the Reorganized Debtors' Assets, the Liquidating Trust, Liquidating Trustee, and Liquidating Trust Assets.  Any undeliverable or unclaimed Distributions shall become the property of the Reorganized Debtors free and clear of any Claims notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in this Plan shall require the Debtors, the Reorganized Debtors, the Liquidating Trustee or Plan Administration Committee to attempt to locate any holder of an Allowed Claim.

c.  Failure to Present Checks.  Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within 120 days after the issuance of such check.  Any holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check within 180 days after the date of mailing or other delivery of such check shall have its Claim for such un-negotiated check discharged and be forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtors, the Reorganized Debtors' Assets, the Liquidating Trust, Liquidating Trustee, and Liquidating Trust Assets.  Any such Distribution shall become the property of the Reorganized Debtors and shall be distributed to Reorganized Debtors, free and clear of any Claims notwithstanding any federal or state escheat laws to the contrary.

7.4  **Compliance with Tax Requirements.**  All Persons holding Claims shall be required to provide Reorganized Debtors with an executed IRS Form W-9.  No Distribution shall be made on account of a claim until the holder of such claim complies with this section.  Any claim for Distribution under the Plan shall be forfeited and barred if this section is not complied with within 1 year of the Effective Date.

# VIII.
# CONDITIONS PRECEDENT

8.1 **Conditions to Confirmation**. Confirmation of this Plan is conditioned upon the Confirmation Order being in a form and substance acceptable to (1) the Debtors, and (2) the Plan Administration Committee.

8.2 **Conditions to the Effective Date**. The Plan may not be consummated, and the Effective Date shall not occur, unless and until each of the conditions set forth below is satisfied:

a. The Circle Ridge Sale Order shall have been entered and a closing shall have occurred on the Circle Ridge Sale Agreement.

b. the Confirmation Order shall not then be stayed, vacated, or reversed or shall not have been amended without the agreement of the Debtors;

c. the Confirmation Order shall not then be subject to a pending appeal, and the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending;

d. the Liquidating Trust shall have been established; and

e. the Liquidating Trustee and the Plan Administration Committee shall have been appointed and assumed their rights and responsibilities under the Plan.

8.3 **Effect of Non-Occurrence of the Conditions to the Effective Date**. If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived in accordance with the Plan on or before the first Business Day that is more than sixty (60) days after the Confirmation Date, or such later date as shall be agreed to by the Debtors, the Plan Proponents may schedule a status hearing with the Bankruptcy Court. If the Confirmation Order is ultimately vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute an admission, a waiver, or release of any Claims against or interests in the Estates.

# IX.
# DISCHARGE, INJUNCTION AND RELATED PROVISIONS

9.1 **Discharge of Claims.** To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, effective as of the Effective Date, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims, Equity Interests and Causes of Action of any kind or nature whatsoever against the Debtors or any of their assets or properties, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, interests or Causes of Action.

Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates shall be deemed discharged and released under and to the fullest extent provided under sections 524 and 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. Such discharge shall void any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent that such judgment relates to a discharged Claim.

Except as otherwise expressly provided by this Plan or the Confirmation Order, upon the Effective Date: (i) the rights afforded herein and the treatment of all Claims and interests shall be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, or any of their assets, property, or Estates; (ii) all Claims and interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely without further notice or action, and (iii) all Entities shall be precluded from asserting against the Debtors, the Estates, the Reorganized Debtors, each of their respective successors and assigns, and each of their respective assets and properties, any such Claims or interests, whether based upon any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or otherwise.

9.2 **Exculpation.** Effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Entity for any claims or Causes of Action arising on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation of this Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of this Plan; provided, however, that the foregoing provisions of this exculpation shall not operate to waive or release: (i) any Causes of Action arising from gross negligence, actual fraud or willful misconduct of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of any Entity to enforce this Plan and the contracts, instruments, releases,  and other agreements or documents delivered under or in connection with this Plan or assumed pursuant to this Plan or assumed pursuant to Final Order of the Bankruptcy Court; and/or (iii) any objections with respect to any Fee Claim; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions or inactions.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person.

9.3 **Injunction.** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE, TO THE FULLEST EXTENT PROVIDED UNDER SECTION 524 AND OTHER APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, PERMANENTLY ENJOINED FROM: (I) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY SUIT, ACTION OR OTHER PROCEEDING; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE, OR ORDER; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE; (IV) ASSERTING A SETOFF OR RIGHT OF SUBROGATION OF ANY KIND; OR (V) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, IN EACH CASE ON ACCOUNT OF OR WITH RESPECT TO ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, SETTLED OR TO BE SETTLED OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER AGAINST ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY SO RELEASED, DISCHARGED, OR EXCULPATED).  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR SECTION 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT.

9.4 **Binding Nature of Plan.** ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN SHALL BIND, AND SHALL BE DEEMED BINDING UPON, THE DEBTORS, THE REORGANIZED DEBTORS, ANY AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS, ALL ENTITIES THAT ARE PARTIES TO OR ARE SUBJECT TO THE SETTLEMENTS, COMPROMISES, RELEASES, DISCHARGES, AND INJUNCTIONS DESCRIBED IN THIS PLAN, EACH ENTITY ACQUIRING PROPERTY UNDER THIS PLAN, ANY AND ALL NON-DEBTOR PARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES WITH THE DEBTORS AND THE SUCCESSORS AND ASSIGNS OF EACH OF THE FOREGOING, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, AND NOTWITHSTANDING WHETHER OR NOT SUCH ENTITY: (I) WILL RECEIVE OR RETAIN ANY PROPERTY, OR INTEREST IN PROPERTY, UNDER THIS PLAN; (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASES OR; (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN, AFFIRMATIVELY VOTED TO REJECT THIS PLAN OR IS CONCLUSIVELY PRESUMED TO REJECT THIS PLAN.

9.5 **Protection Against Discriminatory Treatment.** To the extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors, or deny, revoke, suspend or refuse to renew a license, permit, charter, franchise or other similar grant to, condition such a grant to, discriminate with respect to such a grant, against a Reorganized Debtor, solely because such Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor is granted or denied a discharge) or has not paid a debt that is dischargeable in the Chapter 11 Cases.

# X.
## RETENTION OF JURISDICTION

10.1 **Jurisdiction.** Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, on and after the Effective Date, retain exclusive jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan the full extent as legally permissible, including, without limitation, jurisdiction to:

   a. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or interest, including, without limitation, the resolution of any request for payment of any Administrative Claim, Fee Claim, Priority Tax Claim, and the resolution of any and all objections to the allowance or priority of any such Claim or interest;

   b. grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

   c. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor is party or with respect to which the Debtors or Reorganized Debtors may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to this Plan after the Effective Date to add executory contracts or unexpired leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected (as applicable);

   d. resolve any issues related to any matters adjudicated in the Chapter 11 Cases;

   e. ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

   f. decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action and Avoidance Actions that are pending as of the Effective Date or that may be commenced in the future;

   g. grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, provided, however that the Reorganized Debtors shall reserve the right to commence applicable actions in all appropriate forums and jurisdictions;

   h. enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan or the Disclosure Statement;

i.      resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

j.      hear and determine all Causes of Action and Avoidance Actions that are pending as of the Effective Date or that may be commenced in the future;

k.      issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference with consummation or enforcement of this Plan;

l.      enforce the terms and conditions of this Plan, and the Confirmation Order;

m.      resolve any cases, controversies, suits or disputes with respect to the Release, the Exculpation, the Injunction and other provisions contained in Article IX hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

n.      enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

o.      resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan and;

p.      enter an order concluding or closing the Chapter 11 Cases.

Notwithstanding the foregoing, if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Article of the Plan, the provisions of this Article X shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## XI.
## MISCELLANEOUS PROVISIONS

11.1    **Dissolution of the Creditors' Committee.**  On and as of the Effective Date, the Creditors' Committee shall dissolve automatically and its members shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases, except regarding Final Fee Applications.  The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the members or advisors to the Creditors' Committee after the Effective Date.

11.2    **Payment of Statutory Fees.**  All outstanding fees payable pursuant to section 1930 of title 28, United States Code shall be paid when due.

11.3 **Modification of Plan.** Effective as of the date hereof and subject to the limitations and rights contained in this Plan: (a) the Plan Proponents reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Reorganized Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan in a manner that is acceptable to the Plan Administration Committee, in accordance with section 1127(b) of the Bankruptcy Code. Notwithstanding the foregoing, the Reorganized Debtors may and with the consent of the Plan Administration Committee, remedy any defect or omission or reconcile any inconsistency in this Plan in such a manner as may be necessary or appropriate to carry out the purpose and intent of this Plan, without further notice to or order of the Bankruptcy Court. A holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

11.4 **Revocation or Withdrawal of Plan.** The Plan Proponents reserve the right to revoke or withdraw this Plan prior to the Effective Date and/or to file subsequent chapter 11 plans.

11.5 **Service of Documents.** Any notice, direction or other communication given regarding the matters contemplated by this Plan (each, a "**Notice**") must be in writing, sent by personal delivery, electronic mail, courier or facsimile and addressed as follows:

If to the Plan Proponents:

> Loeb & Loeb LLP
> 10100 Santa Monica Blvd., Ste. 2200
> Los Angeles, CA 90067
> Telephone:  (310) 282-2000
> Fax: (310) 734-1686
> E-Mail:  bgiven@loeb.com
> Attention:  Bernard R. Given II, Esq.

If to the Creditors' Committee:

> Brinkman Portillo Ronk, APC
> 4333 Park Terrace Dr., Ste 205
> Westlake Village, CA 91361
> Telephone:  (818) 597-2992
> Fax:     (818) 597-2998
> E-Mail:  db@brinkmanlaw.com
> Attention:  Daren R. Brinkman, Esq.

A Notice is deemed to be given and received: (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 5:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, (b) if sent by facsimile, on the Business Day following the date of confirmation of transmission by the originating facsimile, or (c) if sent by electronic mail, when the sender receives an email from the recipient

acknowledging receipt, provided that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this section.  Any party may change its address for service from time to time by providing a Notice in accordance with the foregoing.  Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed.  Sending a copy of a Notice to a party's legal counsel as contemplated above is for information purposes only and does not constitute delivery of the Notice to that party.  The failure to send a copy of a Notice to legal counsel does not invalidate delivery of that Notice to a party.

11.6    **Exemption from Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code.**  Pursuant to section 1146(a) of the Bankruptcy Code, any issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer of property, pursuant to or in connection with this Plan shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States or by any other Governmental Unit, and the Confirmation Order shall direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents evidencing such action or event without the payment of any such Stamp or Similar Tax or governmental assessment. Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of, transactions contemplated by and the Distributions to be made under this Plan.

11.7    **Votes Solicited in Good Faith.**  Upon entry of the Confirmation Order, the Plan Proponents will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Plan Proponents and their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan and any previous plan, if any.

11.8    **Closing of Chapter 11 Cases.**  The Reorganized Debtors shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases as soon as reasonably practical.

11.9    **Conflicts.**  Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Documents, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

11.10    **Substantial Consummation.**  "**Substantial Consummation**" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

REMNANT OIL COMPANY, LLC AND
REMNANT OIL OPERATING, LLC


By: _____ */s/* E. Willard Gary II _____
    E. Willard Gray II
    Debtors and Plan Proponents

LOEB & LOEB LLP


By: _____ */s/* Bernard R. Given II _____
    Bernard R. Given II
    Attorneys for Debtors

**EXHIBIT A**
**DEFINITIONS**

As used in the Debtors' Plan of Reorganization, the following terms shall have the following meanings and, as the context requires, the singular shall include the plural:

"**3-2-1 Claim**" means that certain claim asserted by 3-2-1 Partners, Ltd. pursuant to Claim No. 107 maintained by the Claims and Noticing Agent.

"**Administrative and Fee Claims Reserve**" means the reserve established and maintained by the Reorganized Debtors to pay Allowed Administrative Claims, and Allowed Fee Claims.

"**Administrative Claim**" means an obligation of the Debtors under Bankruptcy Code section 503(b) entitled to priority in payment under Bankruptcy Code section 507(a), including but not limited to: (a) the actual and necessary costs and expenses incurred after the Petition Date for preserving the Estates and/or operating the Debtors' business; (b) cure costs associated with the assumption or assumption and assignment of executory contracts and unexpired leases pursuant to Bankruptcy Code section 365 (other than to the extent assumed by a third party under an asset purchase agreement and sale approved by the Bankruptcy Court); and (c) all Statutory Fees.  As used herein, the term "Administrative Claim" shall exclude Fee Claims.

"**Administrative Claims Bar Date**" means the first Business Day that is at least sixty (60) days after the Effective Date or such other date ordered by the Bankruptcy Court.

"**Affiliate**" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"**Allowed Claim**" means a Claim that is not a Disputed Claim or a Disallowed Claim and (a) for which a Proof of Claim has been timely filed by the applicable Claims Bar Date and as to which no objection to allowance thereof has been timely interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or order of the Bankruptcy Court; (b) that has been listed by the Debtors in their Schedules as liquidated in a specified amount and is not Disputed or contingent and for which no contrary Proof of Claim has been timely filed; or (c) that is expressly Allowed pursuant to the terms of this Plan or a Final Order of the Bankruptcy Court. The term "Allowed Claim" shall not, for purposes of computing Distributions under this Plan, include interest on such Claim from and after the Petition Date, except as provided in sections 506(b) or 511 of the Bankruptcy Code or as otherwise expressly set forth in this Plan or a Final Order of the Bankruptcy Court.

"**Allowed Administrative Claim**" means an Administrative Claim to the extent that it is an Allowed Claim.

"**Allowed Fee Claim**" means a Fee Claim to the extent that it is an Allowed Claim.

"**Allowed General Unsecured Claim**" means a General Unsecured Claim to the extent that it is an Allowed Claim.

"**Allowed Insider General Unsecured Claim**" means an Insider General Unsecured Claim to the extent that it is an Allowed Claim.

"**Allowed Other Secured Claim**" means an Other Secured Claim to the extent that it is an Allowed Claim.

"**Allowed Priority Non-Tax Claim**" means a Priority Non-Tax Claim to the extent that it is an Allowed Claim.

"**Allowed Priority Tax Claim**" means a Priority Tax Claim to the extent that it is an Allowed Claim.

"**Allowed Secured 3-2-1 Claim**" means a Secured 3-2-1 Claim to the extent that it is an Allowed Claim.

"**Allowed Secured FirstCapital Claim**" means a Secured FirstCapital Claim to the extent that it is an Allowed Claim.

"**Allowed Secured Kodiak Claim**" means a Secured Kodiak Claim to the extent that it is an Allowed Claim.

"**Allowed Secured M&M Lien Claim**" means a Secured M&M Lien Claim to the extent that it is an Allowed Claim.

"**Allowed Secured Priority Tax Claim**" means a Secured Priority Tax Claim to the extent that it is an Allowed Claim.

"**Assets**" means (a) all assets and properties of every kind, nature, character and description (whether real, personal, or mixed, whether tangible and intangible, including contract rights, wherever situated and by whomever possessed), including the goodwill related thereto, operated, owned or leased by the Debtors as of the Effective Date and that constitute property of the Estates within the purview of Bankruptcy Code section 541, including, without limitation, any and all Claims, Causes of Action, Avoidance Actions and rights of the Debtors under federal, state, or foreign law, letters of credit issued for the benefit of the Debtors and the monies deposited to secure the performance of any contract or lease by the Debtors; and (b) the proceeds, products, rents and profits of any of the foregoing.  For the avoidance of doubt, Assets include the rights of the Debtors under the Circle Ridge Sale Agreement and the Circle Ridge Sale Order.

"**Available Cash**" means any Cash held by Reorganized Debtors (excluding Cash required to be deposited in the Distribution Reserve) on the Effective Date and each Available Cash Determination Date thereafter computed as follows:  (x) (Cash held by Reorganized Debtors plus Projected Revenue) minus (y) (then current Operating Expenses plus Projected Expenses).

"**Available Cash Determination Date**" means March 31, June 30, September 30, and December 31 of each year beginning September 30, 2020.

"**Available Cash Budget**" means the six (6) month budgets prepared by the Reorganized Debtors projecting Available Cash.

"**Avoidance Actions**" means any claims, rights, defenses, or other Causes of Action arising under Chapter 5 of the Bankruptcy Code, including, without limitation, under Bankruptcy Code sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under similar or related state or federal statutes and common law, including state fraudulent transfer laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date, and whether or not standing to bring such claims is held by any representative of the Estates, any party-in-interest, or any other Entity or Person.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq., and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Western District of Texas, Midland Division, or such other court having jurisdiction over the Chapter 11 Cases or any proceeding within, or appeal of an order entered in the Chapter 11 Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, and as such rules have been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

"**Bar Date**" means, as applicable, (a) the Administrative Claims Bar Date, (b) the General Bar Date, and/or (c) any Rejection Bar Date.

"**Business Day**" means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined by Bankruptcy Rule 9006(a)).

"**Cash**" means money that is legal tender of the United States of America or the indubitable equivalent thereof.

"**Causes of Action**" means any and all claims, rights, demands, actions, suits, obligations, liabilities, defenses, offsets, setoffs, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Entity or Person, in each case whether known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in contract, in tort, in law or in equity, or pursuant to any other theory of law, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, cross-claim, third party action, action for indemnity or contribution or otherwise, whether arising under the Bankruptcy Code or federal, state, common, or other law, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

"**Chapter 11 Cases**" means the jointly administered Chapter 11 cases of the Debtors pending before the Bankruptcy Court and bearing case numbers 19-70106 and 19-70107.

"**Company Agreement Amendments**" means amendments to the Debtors' operating agreements in the form filed as a Plan Document.

"**Circle Ridge Property**" means Debtors' interests in the assets sold pursuant to the Circle Ridge Sale Agreement.

"**Circle Ridge Sale Agreement**" means the agreement by the Debtors pursuant to which the Circle Ridge Property is sold.

"**Circle Ridge Sale Order**" means the Order (A) Authorizing Sale of Circle Ridge Property Free and Clear of all Liens, Claims, Encumbrances and Interests; (B) Authorizing the Assumption, Assignment and Sale of Certain Leases and Executory Contracts; and (C) Granting Related Relief, approving the Circle Ridge Sale Agreement and the sale of the Circle Ridge Property.

"**Claim**" has the meaning ascribed to such term in Bankruptcy Code section 101(5).  As used herein, the term may include an Administrative Claim and a Fee Claim.

"**Claims and Noticing Agent**" means Donlin Recano & Co., the Debtors' Claims, Noticing and Solicitation Agent, as approved by the Bankruptcy Court pursuant to Docket No. 128.

"**Claims Objection Deadline**" means with respect to any applicable Proof of Claim, the latest of (a) one hundred eighty (180) days after the Effective Date; (b) ninety (90) days after the filing of such Proof of Claim, or (c) such other date as may be specifically fixed by Final Order of the Bankruptcy Court for objecting to Claims.

"**Class**" means a category of holders of Claims or interests, as described in Article III of this Plan.

"**Confirmation**" means confirmation of the Plan pursuant to Bankruptcy Code section 1129.

"**Confirmation Date**" means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

"**Confirmation Hearing**" means the hearing before the Bankruptcy Court at which the Plan is confirmed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

"**Creditors' Committee**" means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, as such committee may be reconfigured from time to time until the Effective Date.

"**Debtors**" means ROC and ROO, as debtors and debtors-in-possession in the Chapter 11 Cases.

"**Debtor Releasee**" means each of the members of the Creditors' Committee (solely with respect to each member's conduct subsequent to the Petition Date), the Liquidating Trustee, and each of their respective officers, directors, employees, representatives, advisors, attorneys and experts.

"**Deficiency Claim**" means with respect to any Claim secured by a Lien in any Assets having a value of less than the amount of such Claim (after taking into account other Liens of higher priority in such property), the portion of such Claim equal to the difference between (a) the allowed amount of the Claim and (b) the allowed amount of the secured portion of such Claim (which allowed secured amount may be set pursuant to this Plan).

"**DIP Claims**" mean all Claims of the DIP Lenders under or relating to the DIP Loans.

"**DIP Lenders**" means the lenders of the DIP Loans.

"**DIP Loans**" means (1) that certain loan in the original principal amount of Three Hundred Fifty Thousand and No/100 Dollars ($350,000.00) and (2) that certain loan in the original principal amount of Seven Hundred Fifty Thousand and No/100 Dollars ($750,000.00) made by the DIP Lenders to Debtors and advanced pursuant to the DIP Orders.

"**DIP Order**" means the final orders entered by the Bankruptcy Court at Docket Nos. 78 and 162 in connection with the DIP Loans.

"**Disallowed Claim**" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) (i) is Scheduled at zero, in an unknown amount or as contingent, Disputed or unliquidated and (ii) as to which the Bar Date has been established but no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

"**Disclosure Statement**" means the written disclosure statement that relates to the Plan, including all exhibits, appendices, schedules and annexes attached thereto, as it may be altered, amended, supplemented or modified from time to time, and that is prepared, approved and distributed in accordance with Bankruptcy Code section 1125 and Bankruptcy Rule 3018.

"**Disputed**" means with respect to any Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order, a Claim (i) as to which no Request for Payment or Proof of Claim has been filed by the applicable Bar Date and which is listed in the Schedules as unliquidated, contingent, or Disputed; (ii) as to which a Request for Payment or Proof of Claim has been filed by the applicable Bar Date and as to which an objection or request for estimation has been filed by the applicable Claims Objection Deadline, or which is otherwise Disputed in accordance with applicable law and this Plan, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; (iii) as to which a Request for Payment or Proof of Claim was required to be filed by the Bar Date, but as to which a Request for Payment or Proof of Claim was not timely or properly filed in accordance with the provisions of the Notice of Commencement and Official Form 410; or (iv) if not otherwise Allowed, as to which the applicable Claims Objection Deadline has not expired.

"**Disputed Claim**" means any Claim, or any portion thereof, that is not a Disallowed Claim, that has not been Allowed pursuant to this Plan or a Final Order of the Bankruptcy Court, and

      (a)     if a Proof of Claim has been timely filed by the applicable Bar Date, such Claim is designated on such Proof of Claim as unliquidated, contingent or Disputed, or in zero or unknown amount, and has not been resolved by written agreement of the parties or a Final Order of the Bankruptcy Court; or

      (b)     if either (1) a Proof of Claim has been timely filed by the applicable Bar Date or (2) a Claim has been listed on the Schedules as other than unliquidated, contingent or Disputed, or in zero or unknown amount, a Claim (i) as to which Debtors, Reorganized Debtors, or a Plan Proponent have timely filed an objection or request for estimation in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court or for which such time period to object or file a request for estimation has not yet expired as of the applicable date of determination or (ii) which is otherwise Disputed by Debtors, Reorganized Debtors or a Plan Proponent in accordance with applicable law, in each case which objection, request for estimation or dispute has not been withdrawn, overruled or determined by a Final Order; or

      (c)     that is the subject of an objection or request for estimation filed in the Bankruptcy Court and which such objection or request for estimation has not been withdrawn, resolved or overruled by Final Order of the Bankruptcy Court; or

      (d)     that is otherwise Disputed by Debtors, or Reorganized Debtors in accordance with the provisions of this Plan or applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

"**Disputed Claims Reserve(s)**" shall have the meaning ascribed to such term in Section 6.4 of the Plan.

"**Distribution**" means any payment of Cash to be made under the Plan to holders of Allowed Claims.

"**Distribution Address**" means: (a) the address indicated on any applicable Proof of Claim or Request for Payment properly filed by an Entity or Person, or its/his authorized agent, prior to the applicable Bar Date; (b) if no Proof of Claim or other Request for Payment has been filed, the address set forth in the Schedules; or (c) to the extent a Claim has been transferred, the address in the notice filed with the Bankruptcy Court in accordance with Bankruptcy Rule 3001(e) on or before the Effective Date and in accordance with Section 7.3 of the Plan; provided, however, that any Entity or Person may, after the Effective Date, select an alternative Distribution Address by filing a notice with the Bankruptcy Court (with a copy served on the Reorganized Debtors and Liquidating Trustee) identifying such alternative Distribution Address.

"**Distribution Date(s)**" means the date or dates on which a Distribution is required to be made under the Plan.

"**Distribution Reserve**" means (i) the Disputed Claims Reserve and (ii) the Unclaimed Distributions.

"**Effective Date**" means: (a) if no stay of the Confirmation Order is in effect, the first Business Day after the date on which all of the conditions set forth in Article VIII of the Plan have been satisfied or waived in accordance with that Article, or such later date as may be reasonably agreed to by the Plan Proponents; or (b) if a stay of the Confirmation Order is in effect, on the first Business Day (or such later day as may be reasonably agreed to by the Debtors and Creditors' Committee ) after the later of: (i) the date such stay is vacated; and (ii) the date each condition set forth in the Plan has been satisfied or waived as set forth in the Plan.

"**Entity**" has the meaning ascribed to such term in Bankruptcy Code section 101(15).

"**Estates**" means the Chapter 11 estates of each of the Debtors created by Bankruptcy Code section 541.

"**Estimation Order**" means a Final Order, which may be the Confirmation Order, estimating for voting, Distribution or any other proper purposes under the Bankruptcy Code the aggregate (and if applicable, individual) amount of any Claims, whether classified or unclassified under this Plan.

"**Exculpated Parties**" means the Debtor Releasees, the Plan Proponents, the members of the Plan Administration Committee, and each of their respective officers, directors, employees, representatives, advisors, attorneys and experts.

"**Face Amount**" means (a) when used in reference to a Disputed Claim, the full stated amount of the Claim asserted by the applicable holder in any Proof of Claim timely filed with the Bankruptcy Court (or such lesser estimated amount approved by order of the Bankruptcy Court), and (b) when used in reference to an Allowed Claim, the Allowed amount of such Claim.

"**Fee Claim**" means a Claim: (a) of a Professional person retained by order of the Bankruptcy Court for compensation and/or reimbursement of expenses pursuant to Bankruptcy Code sections 327, 328, 330, or 331 (other than ordinary course professionals of the Debtor); and (b) of any professional or other party-in-interest seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases, pursuant to Bankruptcy Code section 503(b).

"**Fee Claims Bar Date**" means the date that is the first Business Day after the date that is sixty (60) days after the Effective Date unless extended by order of the Bankruptcy Court.

"**Final Fee Applications**" means all final applications seeking payment of Fee Claims.

"**Final Order**" means an order or judgment of the Bankruptcy Court (or other court with jurisdiction), as entered on the docket of the Bankruptcy Court (or other court with jurisdiction), that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal or seek review has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for review, rehearing, remand or certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a

motion under Bankruptcy Code section 502(j), Bankruptcy Rules 9023 and 9024, or any other rules or law governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

"**Financial Projections**" means the projections filed as Exhibit C to the Disclosure Statement, as it may be amended, restated or revised prior to the Confirmation Date.

"**FirstCapital Claim**" means that certain claim asserted by FirstCapital Bank of Texas, N.A. pursuant to Claim No. 99 as maintained by the Claims and Noticing Agent.

"**FirstCapital Collateral**" means the collateral listed on that certain UCC-1 Financing Statement filed against ROC by FirstCapital Bank of Texas, N.A. on February 21, 2017.

"**General Bar Date**" means December 2, 2019.

"**General Unsecured Claim**" means a Claim (including any Deficiency Claim) that is not an Administrative Claim, a Fee Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Priority Tax Claim, a Secured FirstCapital Claim (including any Deficiency Claim), a Secured 3-2-1 Claim, a Secured M&M Claim, a Secured Kodiak Claim, an Other Secured Claim, or an Insider General Unsecured Claim, whether Allowed or Disputed.  To the extent applicable, the limitations imposed by section 502 of the Bankruptcy Code shall apply to the relevant General Unsecured Claim, including, without limitation, subsection 502(b)(6) and subsection 502(b)(7) thereof.

"**Impaired**" has the meaning ascribed to such term in Bankruptcy Code section 1124.

"**Initial Capital Expenditure**" means initial expenditures for the development of the North Square Lake Unit, which shall total approximately $2.5 million and shall be deployed in the first six months following the Effective Date from the proceeds of the sale of the Circle Ridge Property, Wind Farm Leases and/or Non-Caprock Assets.

"**Insider General Unsecured Claim**" means each of the claims of (1) WS Oil and Gas Limited, (2) Gilmore Oil & Gas, LP, and (3) RS Resources Limited, as set forth in the Schedules.

"**IRS**" means the Internal Revenue Service.

"**Kodiak Claim**" means that certain claim asserted by Kodiak Gas Services, LLC pursuant to Claim No. 88 as maintained by the Claims and Noticing Agent

"**Lien**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(37).

"**Liquidating Trust**" means the trust established pursuant to Section 4.8 of the Plan and in accordance with the Liquidating Trust Agreement.

"**Liquidating Trust Agreement**" means that certain trust agreement, as may be amended, that establishes and governs the Liquidating Trust, in the form filed as a Plan Document, the contents of which are incorporated herein by reference.

"**Liquidating Trust Assets**" means all of the Debtors' right, title and interest in and to (1) the Wind Farm Leases, (2) the Non-Caprock Assets, (3) Avoidance Actions, and (4) Available Cash on each Available Cash Determination Date, to the extent such assets are not sold as of the Effective Date.

"**Liquidating Trust Beneficiaries**" means the holders of Claims in Class 7.

"**Liquidating Trustee**" means the Person appointed and serving from time to time as Liquidating Trustee under the Liquidating Trust Agreement, acting in his capacity as such on behalf of the Liquidating Trust.

"**Local Rules**" means the Local Court Rules of the United States Bankruptcy Court for the Western District of Texas.

"**M&M Lien**" means a statutory lien or privileges granted by the laws of the state to which an oil and gas lease or well is located for the furnishing of services, materials or equipment for operations on such oil and gas lease or well and which is properly perfected.

"**M&M Lien Claim**" means any Claim for furnishing services, materials or equipment for operations on oil and gas leases or wells owned by a Debtor as to which a valid, timely filed and properly perfected statutory lien or privilege was granted by the laws of the state in which the property is located and which is not subject to Avoidance Action.

"**Notice of Commencement**" means the Notice of Chapter 11 Bankruptcy Case approved by the Bankruptcy Court at Docket No. 22.

"**Non-Caprock Assets**" means all of the Debtors' rights and interests in oil and gas wells and leases located in Chaves, Eddy, and Lea Counties, New Mexico with the exception of the the North Square Lake Unit and the Circle Ridge Property.

"**North Square Lake Unit**" means all of the Debtors' rights and interests in the unit known as the North Square Lake Unit located in Eddy County, New Mexico.

"**Operating Expenses**" means expenses incurred in connection with ownership and development of Reorganized Debtors' assets, including general and administrative expenses, overhead and other operational expenses of Reorganized Debtors including, but not limited to, oil and gas lease operating, capital expenditure payments required to preserve oil and gas leases in addition to the Initial Capital Expenditure and the Reinvestment Expenses, reasonable professional costs related to the prosecution of Causes of Action, objecting to Disputed Claims, making Distributions, and reasonable compensation for the Liquidating Trustee.

"**Other Secured Claim**" means a Secured Claim arising prior to the Petition Date against the Debtors, other than a Secured Priority Tax Claim, Secured 3-2-1 Claim, Secured FirstCapital Claim, or Secured M&M Lien Claim and that is not subject to an Avoidance Action.

"**Person**" has the meaning ascribed to such term in Bankruptcy Code section 101(41).

"**Petition Date**" means July 16, 2019.

"**Plan**" means this Plan of Reorganization, dated as of the date set forth on the first page hereof, together with any amendments or modifications hereto as the Debtors may file hereafter in accordance with the terms of the Plan.

"**Plan Administration Committee**" has the meaning ascribed to such term in Section 4.9 of the Plan.

"**Plan Documents**" means (1) the Liquidating Trust Agreement (2) the Company Agreement Amendments, and (3) such other documents as may be necessary to effectuate the Plan, which shall be filed no later than fourteen (14) days prior to the deadline to vote to accept or reject the Plan.

"**Priority Available Cash**" means Available Cash that is dedicated first to satisfaction of claims as set forth in Section 3.13 above.

"**Priority Non-Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code sections 507(a)(3), (4), (5), (6) or (7).

"**Priority Tax Claim**" means a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code section 507(a)(8).

"**Professional**" means a Person employed in the Debtors' Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, 331 and 363 of the Bankruptcy Code.

"**Projected Expenses**" means a projection prepared by Reorganized Debtors and approved by the Plan Administration Committee of Reorganized Debtors' expenses including future Operating Expenses, Reinvestment Expenses and payments required under this Plan for Administrative Claims, Class 1 Claims, Class 2 Claims, Class 4 Claims, Class 5 Claims, and Class 6 Claims, and Class 7 Claims each for the six (6) month period following the applicable Available Cash Determination Date, plus a contingency reserve.

"**Projected Revenue**" means a cash flow projection prepared by Reorganized Debtors and approved by the Plan Administration Committee of anticipated Cash receipts of Reorganized Debtors for the six (6) month period following an applicable Available Cash Distribution Date.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court or with the Claims and Noticing Agent in connection with the Chapter 11 Cases.

"**Ratable, Ratably or Pro Rata**" means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class of the date of determination, plus (b) Disputed Claims (in their aggregate Face Amounts) in such Class as of the date of determination.

"**Reinvestment Expenses**" means capital expenditures for development of the North Square Lake Unit, which shall be paid from the revenue of the North Square Lake Unit in the first twenty-four months after the Effective Date and shall total $1.9 million.

"**Rejection Bar Date**" means the date that is twenty-eight (28) days after entry of any order authorizing the rejection of an executory contract or unexpired lease.

"**Reorganized Debtors**" means ROC and ROO as reorganized pursuant to this Plan on and after the Effective Date.

"**Reorganized Debtors' Assets**" means all assets of the Debtors on the Effective Date other than the Liquidating Trust Assets.

"**Request for Payment**" means a request for payment of an Administrative Claim filed with the Bankruptcy Court in connection with the Chapter 11 Cases.

"**ROC**" means Remnant Oil Company, LLC, a Texas limited liability company and a Chapter 11 Debtor.

"**ROC Interest**" means any equity security, within the meaning of Bankruptcy Code section 101(16), issued by ROC and outstanding prior to the Effective Date, including, without limitation, any membership interests of ROC, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any equity ownership interests in ROC prior to the Effective Date.

"**ROO**" means Remnant Oil Operating, LLC, a Texas limited liability company and a Chapter 11 Debtor.

"**ROO Interest**" means any equity security, within the meaning of Bankruptcy Code section 101(16), issued by ROO and outstanding prior to the Effective Date, including, without limitation, any membership interests of ROO, together with any warrants, conversion rights, rights of first refusal, subscriptions, commitments, agreements, or other rights to acquire or receive any equity ownership interests in ROO prior to the Effective Date.

"**Schedules**" means, collectively, the (a) schedules of assets, liabilities and executory contracts and (b) statements of financial affairs, as each may be amended and supplemented from time to time, filed by the Debtors pursuant to Bankruptcy Code section 521.

"**Secured 3-2-1 Claim**" means a 3-2-1 Claim to the extent that it is a Secured Claim.

"**Secured Claim**" means a Claim, net of surcharges pursuant to Bankruptcy Code § 506(c), (a) that is secured by a valid, perfected and enforceable Lien that is not subject to an Avoidance Action, in or upon any right, title or interest of the Debtor in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date or (b) that is subject to an offset right pursuant to Bankruptcy Code section 553, to the extent of the amount subject to a valid setoff as of the Effective Date; which Claim shall be in an amount, including post-petition interest and any reasonable fees, costs or charges to the extent permitted under Bankruptcy Code section 506(b), that is agreed to in writing by the holder and Reorganized Debtor or is determined by the Bankruptcy Court pursuant to Bankruptcy Code section 506(a).

"**Secured FirstCapital Claim**" means a FirstCapital Claim to the extent that it is a Secured Claim.

"**Secured M&M Lien Claim**" means an M&M Lien Claim to the extent it is a Secured Claim.

"**Secured Priority Tax Claim**" means a Priority Tax Claim to the extent it is a Secured Claim.

"**Statutory Fees**" means the fees due and payable pursuant to section 1930 of title 28 of the United States Code.

"**Subordinated Claim**" means (a) any Claim asserted against the Debtors that is subordinated pursuant to either Bankruptcy Code section 510(b) or Bankruptcy Code section 510(c); or (b) any Claim for any fine, penalty, or forfeiture, or multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, or damage is not compensation for actual pecuniary loss suffered by the holder of such Claim, including, without limitation, any such Claim based upon, arising from, or relating to any Cause of Action whatsoever (including, without limitation, violation of law, willful intellectual property infringement, fraud, personal injury, or wrongful death, whether secured or unsecured, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising in law, equity or otherwise), and any such Claim asserted by a governmental unit in connection with a tax or other obligation owing to such unit.

"**Tax Code**" means the United States Internal Revenue Code of 1986, as amended, modified or supplemented from time to time, and the rules and regulations promulgated thereunder.

"**Unclaimed Distribution**" means any Cash or other distributable property unclaimed for a period of One Hundred Twenty (120) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto in respect of such holder's Allowed Claim.  Unclaimed Distribution shall, without limitation, include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Reorganized Debtors to locate such address which were commercially reasonable under the circumstances; and (d) checks (and the funds represented thereby) not mailed or delivered because a holder of a Claim or interest is requested to provide a taxpayer identification number or to otherwise satisfy any tax withholding requirements with respect to a Distribution and such holder fails to do so within one hundred twenty (120) days of the date of such request.

"**Unimpaired**" means, with respect to any Claim, that such Claim is not Impaired within the meaning of Bankruptcy Code section 1124.

"**Wind Farm Leases**" means all of the Debtors' rights and interests in (1) that certain Wind Farm Lease with ROC, as wind lessor, EDF Renewables Development, Inc., as lessee, and TK Ranch LLC, as surface lessor recorded in the Official Records of Chaves County, New

Mexico on February 14, 2019 in Book 818, Page 1398, as amended, and (2) that certain Wind Farm Lease with ROC, as wind lessor, EDF Renewables Development, Inc., as lessee, and TK Ranch LLC, as surface lessor recorded in the Official Records of Chaves County, New Mexico on February 14, 2019 in Book 818, Page 1426, as amended, as well as the Debtors' 50% royalty interest in the payments to be made to Limestone Livestock, LLC under its Wind Farm Lease.