**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 06, 2020**

_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**
_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION**

| | | |
|---|---|---|
| In re: | § § | |
| Remnant Oil Company, LLC and | § | Case No. 19-70106 |
| Remnant Oil Operating, LLC, | § | Case No. 19-70107 |
| | § | |
| Debtors. | § | Chapter 11 |
| | § | |
| | § | (Jointly Administered under |
| | § | Case No. 19-70106) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507, BANKRUPTCY RULES 2002, 4001, 6004, AND 9014 AUTHORIZING THE DEBTORS-IN-POSSESSION TO OBTAIN ADDITIONAL POSTPETITION FINANCING**

Upon the motion (the "**Motion**") of the Debtors, Remnant Oil Company, LLC, and Remnant Oil Operating, LLC (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), pursuant to sections 105(a), 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things, entry of an order:

i.  Authorizing the Debtors to obtain additional postpetition financing in the amount of $250,000 (the "**Additional DIP Facility**") on substantially the same terms as set forth in this Court's *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, (I) Authorizing the Debtors-In-Possession to Obtain Postpetition Financing, (II) Granting Liens and Providing Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. 162] (the "**Existing DIP Facility Order**") to (A) pay certain costs, fees and expenses related to the Chapter 11 Cases as provided for in this Order; and (B) provide working capital and for other general corporate purposes of the Debtors, all in accordance with the Budget attached hereto as **Exhibit 1**.

ii.  Authorizing the Debtors to execute an amendment (the "**Amendment**") to that certain Debtor-in-Possession Loan and Security Agreement, dated as of August 30, 2019 (the "**DIP Loan Agreement**" and, together with the Amendment and the Budget, the "**DIP Loan Documents**")[1] to reflect the amount of the Additional DIP Facility and to perform all such other and further acts as may be required in connection with the DIP Loan Documents, including the DIP Obligations, and all instruments, security agreements, assignments, pledges, mortgages, reaffirmations and other documents referred to therein or requested by the DIP Lender to give effect to the terms thereof;

iii.  Authorizing the Debtors to use proceeds of the Additional DIP Facility as permitted in the DIP Loan Documents and in accordance with this Order;

iv.  Extending the liens granted to the DIP Lender in connection with the Existing DEIP Facility to the Additional DIP Facility as follows: (a) pursuant to Bankruptcy Code

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed in the Motion or the Existing DIP Facility Order, as applicable.

sections 364(c)(2), valid, perfected, enforceable and non-avoidable first priority priming liens on and security interests in the portion of the DIP Collateral described in Exhibit 2 and Exhibit 3 to the Existing DIP Facility Order that was not subject to valid, perfected and non-avoidable liens prior to entry of the Existing DIP Facility Order and (b) pursuant to Bankruptcy Code section 364(d)(1) valid, perfected, enforceable and non-avoidable first priority security interests upon all Collateral set forth on Exhibit 2 to the Existing DIP Facility Order that is subject to valid mechanics' and materialmen's liens (collectively, the "**Prepetition Mechanics' Liens**");

  v. Vacating and modifying the automatic stay pursuant to Bankruptcy Code § 362 to the extent necessary to implement and effectuate the terms and provisions of this Order and the DIP Loan Documents; and

  vi. Granting the Debtors such other and further relief as is just and equitable.

The Court having held a hearing on the Motion on March 4, 2020 (the "**Interim Hearing**"); the Court having considered all objections, if any, to the Motion; and upon the record made (a) by the Motion and the exhibits attached thereto; (b) the *Declaration of Bernard R. Given II in Support of Motion for Authorization to Obtain Debtor-in-Possession Financing* [Dcket No. 50-1] and the *Declaration of E. Willard Gray II in Support of Motion of Debtors for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507, Bankruptcy Rules 2002, 4001, 6004, and 9014, (I) Authorizing the Debtors-In-Possession to Obtain Postpetition Financing, (II) Granting Liens and Providing Administrative Expense Status, (III) Granting Adequate Protection, and (IV) Granting Related Relief* [Docket No. 120], and after due deliberation and consideration, and good and sufficient cause appearing therefor,

  **IT IS HEREBY FOUND AND CONCLUDED THAT:**[2]

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that

  a. On July 16, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code.

  b. This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has authority to enter this Interim DIP Order consistent with Article III of the United States Constitution.

  c. Sufficient and adequate notice of the Motion and entry of an Interim DIP Order has been given pursuant to Bankruptcy Code §§ 102(1) and 364(c) and (d) and Bankruptcy Rules 2002 and 4001(c) to all entities entitled thereto such that no other or further notice of the Motion or of the entry of this Interim DIP Order need be provided to any entity.

  d. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as set forth herein.

2. Any objections to the Motion or to entry of this Interim DIP Order that have not been withdrawn or otherwise resolved are hereby OVERRULED.

3. The Existing DIP Facility Order remains in full force and effect and is incorporated herein by reference.

4. The execution and delivery of the Amendment by the Debtors is authorized and approved. Further, the Debtors are expressly authorized and directed to (a) execute and deliver to DIP Lender, as applicable, any other document of any kind required to be executed and delivered

---

any of the following findings of fact constitute conclusions of law, they are adopted as such. Pursuant to Bankruptcy Rule 7052, to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. Statements made by the Court from the bench during the Interim Hearing shall constitute additional conclusions of law and findings of fact, as appropriate.

in connection with the Amendment and the other DIP Loan Documents; (b) take any action to carry out the intent and purpose of the DIP Loan Documents, including all such actions to create, protect, and perfect the liens granted DIP Lender pursuant to this order, and (c) comply with and perform all of the terms and conditions contained in the Amendment, DIP Loan Agreement and other DIP Loan Documents. Upon execution and delivery of the DIP Loan Documents and entry of this Interim DIP Order, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, are enforceable against the Debtors and any successor trustee, in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this DIP Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or applicable nonbankruptcy law, except to the extent this Order expressly provides otherwise.

5. To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby immediately authorized to borrow from the DIP Lender the maximum principal amount not to exceed $250,000 to be used consistent with the Budget.

6. The Debtors are authorized and directed to pay the reasonable and documented costs and expenses of the DIP Lender associated with the preparation, execution, delivery and administration of the DIP Loan Documents and any amendment or waiver with respect thereto, as well as proceedings before the Court relating to the Additional DIP Facility (including the reasonable fees, disbursements and other charges of counsel, financial advisors and other professionals and advisors) (the "**DIP Lender Expenses**"). The DIP Lender shall provide redacted copies of its respective invoices reflecting their professional costs, fees, and expenses incurred in connection with the DIP Loan Documents (edited to delete any attorney-client communications, attorney work product, or other confidential information) to the Debtors, the

United States Trustee, and the official committee of unsecured creditors (the "**Committee**"). Any such party may object to the reasonableness of any such costs, fees, and expenses. However, any such objection shall be forever waived and barred, and the Debtors shall promptly pay such invoiced DIP Lender Expenses, unless, within ten (10) calendar days of receipt of the invoice to which the objection relates or such later date as agreed to by the DIP Lender: (1) the objection is served upon the DIP Lender and its counsel; and (2) the objection describes with particularity the items or categories of fees, costs, and expenses that are the subject of the objection and provides the specific basis of the objection to each such item or category of fees, costs, and expenses. To the extent such objection cannot be resolved, the objection shall be filed with the Court and set for a hearing. Any objection to the fees, costs, and expenses set forth on any such invoice shall be limited to the reasonableness or necessity of the particular items or categories of the fees, costs, and expenses which are the subject of such objection. The disallowance of any such fees and expenses shall not affect the DIP Lender's right to collect such amounts from any person or entity other than the Debtors.

7. The DIP Lender Expenses are not subject to the provisions of Bankruptcy Code §§ 327, 328, 329, 330, or 331 and will be paid pursuant to the DIP Loan Agreement without further order of this Court, except in the event the Court is required to adjudicate a dispute relating to payment of the DIP Lender Expenses.

8. As security for the Additional DIP Facility, and as provided in the Amendment, the other DIP Loan Documents and this Interim DIP Order, the DIP Lender, shall have (effective and continuing, without the necessity of the execution, filing, and/or recordation of mortgages, security agreements, control agreements, patent security agreements, trademarks security agreements, pledge agreements, financing statements, or otherwise): (a) pursuant to Bankruptcy

Code sections 364(c)(2), valid, perfected, enforceable and non-avoidable first priority priming liens on and security interests in the portion of the collateral described in Exhibit 2 and Exhibit 3 to the Existing DIP Facility Order that is not subject to valid, perfected and non-avoidable liens and (b) pursuant to Bankruptcy Code section 364(d)(1) valid, perfected, enforceable and non-avoidable first priority security interests upon all collateral set forth on Exhibit 2 to the Existing DIP Facility Order that is subject to the Prepetition Mechanics' Liens (together, the "**Additional DIP Facility Liens**"). The Additional DIP Facility Liens are in addition to the liens securing the Existing DIP Facility amount and are senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates, as well as to any administrative claimants with respect to the DIP Collateral, subject only to the Permitted Liens.

9. For the avoidance of doubt, the DIP Collateral shall not include the collateral of 3-2-1 Partners, Ltd and the Additional DIP Facility Liens shall not extend to the collateral of 3-2-1 Partners, Ltd. The Additional DIP Facility Liens shall also not extend to the collateral of FirstCapital Bank, N.A.

10. This Interim DIP Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the Additional DIP Facility Liens extended herein, effective as of the date of this Interim DIP Order, without any further action by Debtors or the DIP Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages, certificates or other agreements, documents or instruments. Notwithstanding the foregoing, the Debtors shall execute and deliver to the DIP Lender such financing statements, mortgages, instruments, certificates, agreements and other documents as the DIP Lender may reasonably request from time to time to provide further evidence of the perfection of the

Additional DIP Facility Liens, and any such documents filed by the DIP Lender shall be deemed filed as of the date of this Interim DIP Order.

11. While any portion of the DIP Obligations remains unpaid or any of the DIP Loan Documents remains in effect, the Debtors shall not seek entry of any order approving or authorizing (under Bankruptcy Code §§ 105 or 364, or otherwise) (a) the granting of any lien or security interest in any of the DIP Collateral in favor of any party other than the DIP Lender or (b) the obtaining of credit or the incurring of indebtedness that is entitled to superpriority administrative status, in either case *pari passu* with or superior to that granted to the DIP Lender pursuant to this Interim DIP Order, unless, in connection with any transaction cited in clause (a) or (b) of this Paragraph such request by the Debtors seeks to authorize and direct that the full amount of the DIP Obligations shall first be paid indefeasibly and in full from the proceeds of the DIP Collateral (subject to satisfaction of the Permitted Liens).

12. The DIP Facility, including the Existing DIP Facility and Additional DIP Facility amounts, shall terminate and the DIP Loans and all other DIP Obligations shall mature and be due and owing, upon DIP Lender's election, on the Maturity Date. Written notice of the occurrence of the Maturity Date shall be given by electronic mail (or other electronic means) to the Notice Parties.

13. The DIP Lender may not repossess, foreclose or seize any DIP Collateral after maturity without delivering to the Debtor, the Office of the United States Trustee, and the Committee, and filing with the Bankruptcy Court, a notice of the occurrence of the Maturity Date. At any time after the fifth business day after the delivery and filing of such notice, unless the Bankruptcy Court extends such deadline, the DIP Lender shall have automatic and immediate relief from the automatic stay with respect to the DIP Collateral (without regard to the passage of

time provided for in Fed. R. Bankr. P. 4001(a)(3)), and shall be entitled to exercise any and all rights and remedies available under the DIP Loan Documents or applicable law as may otherwise be applicable.

14. The Debtors shall indemnify and hold harmless the DIP Lender, and each of its respective partners, members, officers, directors, employees, affiliates, successors, assigns, agents, counsel and other advisors (collectively, the "**Indemnified Parties**") from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and expenses of counsel) that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or by reason of, or in connection with the preparation for a defense of, any investigation, litigation or proceeding arising out of, related to or in connection with the DIP Facility, the transactions contemplated thereby and in the DIP Loan Documents, and any use made or proposed to be made with the proceeds thereof.

15. The automatic stay imposed by Bankruptcy Code § 362(a) is hereby modified, to the extent necessary, to implement and effectuate the terms and conditions of this Inteirm DIP Order.

16. The Debtors are authorized to perform all acts and execute and comply with the terms of such other documents, instruments, and agreements in addition to the Amendment and DIP Loan Documents, as the DIP Lender may reasonably require, as evidence of and for the protection of the DIP Obligations, or which otherwise may be deemed reasonably necessary by the DIP Lender to effectuate the terms and conditions of this Interim DIP Order and the DIP Loan Documents. The Debtors and the DIP Lender are hereby authorized to implement, in accordance

with the terms of the DIP Loan Documents, any non-material modifications of the DIP Loan Documents without further order of this Court.

17. Upon the indefeasible payment in full in cash, and the termination of, the DIP Facility, the Debtors shall execute and deliver in favor of DIP Lender a valid and binding termination and release agreement, in form and substance reasonably acceptable to the DIP Lender.

18. Neither the Debtors nor any representative of any of any such estate (including any successor trustee) will invoke or seek to invoke the surcharge provisions of Bankruptcy Code §506(c), the enhancement of collateral provisions of Bankruptcy Code §552 (including, without limitation, the "equities of the case" exception under Bankruptcy Code §552(b)) or any other legal or equitable doctrine upon the DIP Lender or any of the DIP Collateral for the benefit of any party in interest, including the Committee, any trustee, or any professionals engaged by any of the foregoing.

19. By executing the DIP Loan Documents or taking any actions pursuant to this Interim DIP Order, the DIP Lender shall not: (1) be deemed to be in control of the operations or liquidation of the Debtors or their respective estates; or (2) be deemed to be acting as a "responsible person" with respect to the operation, management, or liquidation of the Debtors or their respective estates.

20. The DIP Lender shall not be subject to the equitable doctrine of marshaling or any other similar doctrine with respect to any of the DIP Collateral.

21. The DIP Lender shall not be required to file any proof of claim in the Chapter 11 Cases for any claim under the DIP Loan Documents, or for any claim allowed herein.

22. Unless the DIP Lender consents thereto, no order shall be entered confirming a plan in these Chapter 11 Cases unless such order provides for the indefeasible and final payment of the DIP Obligations in full in cash on the earlier of: (1) the effective date thereof; and (2) the Maturity Date.

23. The DIP Lender's failure, at any time or times hereafter, to require strict performance by the Debtors (or by any successor trustee) of any provision of this Order or the DIP Loan Documents shall not waive, affect, or diminish any right of the DIP Lender thereafter to demand strict compliance and performance therewith. No delay on the part of the DIP Lender in the exercise of any right or remedy under this Order, the DIP Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law shall preclude any other or further exercise of any right or remedy. The DIP Lender shall not be deemed to have suspended or waived any of its rights or remedies under this Interim DIP Order, the DIP Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of such party, and directed to the Debtor.

24. Any stay, modification, reversal, or vacation of this Interim DIP Order shall not affect the validity and enforceability of any DIP Obligations of the Debtors to the DIP Lender incurred pursuant to this Interim DIP Order or the validity, priority, or enforceability of any of the Additional DIP Facility Liens granted to the DIP Lender under this Interim DIP Order. Notwithstanding any such stay, modification, reversal, or vacation, all Additional DIP Facility Liens granted under this Interim DIP Order, the DIP Loans made pursuant to this Interim DIP Order in respect of the DIP Loan Agreement, and all DIP Obligations incurred by the Debtors or the Debtors' estates pursuant hereto and pursuant to the terms of the DIP Loan Documents prior to the effective date of any such stay, modification, reversal, or vacation shall be governed in all

respects by the original provisions of this Interim DIP Order, and the DIP Lender shall be entitled to all the rights, privileges, and benefits, including, without limitation, the Additional DIP Facility Liens, and priorities granted herein with respect to all such DIP Obligations.

25. The provisions of this Interim DIP Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) confirming any plan of reorganization or liquidation in the Chapter 11 Cases (and, to the extent not satisfied in full, the DIP Obligations shall not be discharged by the entry of any such order, notwithstanding Bankruptcy Code § 1141(d)); (b) converting the Chapter 11 Cases to chapter 7 cases; (c) appointing a chapter 11 trustee, or (d) dismissing the Chapter 11 Cases. The terms and provisions of this Interim DIP Order as well as the Additional DIP Facility Liens extended pursuant to this Interim DIP Order and the DIP Loan Documents shall continue in full force and effect notwithstanding the entry of such order, and such Additional DIP Facility Liens, and any adequate protection liens shall maintain their priority as provided by this Interim DIP Order until all of the DIP Obligations are paid indefeasibly and in full.

26. The provisions of this Interim DIP Order shall be binding upon and inure to the benefit of the DIP Lender and the Debtors and their respective successors and assigns, including any trustee appointed or elected in the Chapter 11 Cases, whether under chapter 11 or chapter 7.

27. If there is any inconsistency between the terms of the DIP Loan Documents and the provisions of this Interim DIP Order, the provisions of this Interim DIP Order shall control to the extent of such inconsistency.

28. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim DIP Order shall be valid, take full effect, and be enforceable immediately

upon entry hereof; there shall be no stay of execution or effectiveness of this Interim DIP Order; and any stay of the effectiveness of this Interim DIP Order that might otherwise apply is hereby waived for cause shown.

29. The Final Hearing on this Motion is scheduled for March 18, 2020 at 1:00 p.m. (prevailing Austin time) before this Court. The Debtor shall promptly serve a notice of entry of this Interim DIP Order and the Final Hearing, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Master Service List. The notice of the entry of this Interim DIP Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with the Court no later than March 13, 2020 at 4:00 p.m. (prevailing Austin time) (the "**Objection Deadline**").

30. The Court has and will retain jurisdiction to enforce this Interim DIP Order.

# # #

**Submitted by:**
Bernard R. Given II, State Bar No. 07990180
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067
Telephone: 310.282.2000
Facsimile: 310.282.2200
Email: bgiven@loeb.com

*Counsel to Debtors and Debtors-in-Possession*