**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| REMNANT OIL COMPANY, LLC and REMNANT OIL OPERATING, LLC, | Case No. 19-70106<br>Case No. 19-70107 |
| Debtors. | (Jointly Administered under Case No. 19-70106) |

**Related Dkt. 409**

**OBJECTION BY LEXON INSURANCE CO. TO THE MOTION OF RONALD INGALLS, CHAPTER 7 TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES (OIL AND GAS ASSETS)**

Lexon Insurance Co. ("Lexon"), by and through their undersigned counsel, Harris Beach PLLC, and local counsel, Locke Lord LLP, hereby submits this Objection (the "Objection") with respect to the *Motion of Ronald Ingalls, Chapter 7 Trustee to Sell Real Property Free and Clear of Liens, Claims, Interests and Encumbrances (Oil and Gas Assets)* (the "Sale Motion") [Dkt. 409].  In support of its Objection, Lexon shows to the Court as follows:

**BACKGROUND**

1.      On July 16, 2019 (the "Petition Date"), each of the Debtors[1] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors' bankruptcy cases have been consolidated for procedural purposes and are being jointly administered.

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] Capitalized terms not defined herein are defined in the Sale Motion or the Asset Purchase Agreement ("APA") attached to the Sale Motion.

83073482v.2

4.      No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  An official committee of unsecured creditors (the "Committee") was appointed on August 7, 2019 [Dkt. 67].

5.      On April 14, 2020, the Debtors' bankruptcy cases were converted to Chapter 7 [Dkt. 369], and Ronald Ingalls has been appointed as interim Chapter 7 trustee ("Trustee").

6.      Together, the Debtors were an oil and gas exploration and production company headquartered in Midland, Texas.  Remnant was geographically focused in the Permian Basin of Southeastern New Mexico and West Texas, the most prolific oil and gas production region in the United States, and specifically on the Northwest shelf area of the Delaware Basin and the Artesia Platform in Eddy, Lea, and Chaves counties of New Mexico.  Geologically, Remnant primarily targeted the shallow Permian-age Guadalupian reservoirs along the Northwest Shelf, principally the Yates, Seven Rivers, Queen, Grayberg, and San Andres Zones with well depths ranging between approximately 1,800' to 4,000'.  *See Disclosure Statement for Debtors' Plan of Reorganization* ("Disclosure Statement") [Dkt. 265] at §VI(A).

7.      In order to obtain appropriate governmental approvals needed to conduct their operations, the Debtors had to provide acceptable financial assurances to federal and state governments, regulatory agencies, and other third parties.

8.      The surety relationship involves three parties: (1) the Principal who is the primary obligor – the Debtors; (2) the Obligee, the party to whom the Principal and the Surety owe the duty – the regulatory authority; and (3) the Surety who is the secondary obligor – Lexon.

9.      Notably, the Debtors retain the primary duty to perform their obligations; the obligations may not simply be handed over to the surety to perform.

2

83073482v.2

10.     Lexon has issued approximately 36 surety bonds to the Debtors to secure certain of the Debtors' payment or performance of various obligations to governmental and non-governmental obligees (the "Lexon Bonded Projects") for the total penal sum of $721,441.00 (the "Lexon Bonds").

11.     In this case, the Obligees are, *inter alia*, (i) the State of New Mexico, (ii) the State of New Mexico, Oil Conservation Division, (iii) the New Mexico Energy, Minerals and Natural Resources Department, and (iv) the New Mexico Bureau of Land Management.

12.     Additionally, as partial consideration for the execution of the Lexon Bonds, Remnant Oil Operating, LLC, among other entities and individual indemnitors, and "all subsidiaries and affiliates now owned and/or hereafter created, controlled, managed or acquired" (collectively, the "Indemnitors"), executed a General Agreement of Indemnity (the "Indemnity Agreement") in which the Indemnitors agreed to indemnify and hold Lexon harmless from every claim that Lexon may pay as a result of the Lexon Bonds.

13.     On August 29, 2019, the Debtors filed a motion seeking the Court's approval of the marketing, auction and sale of all or substantially all of the Debtors' assets ("Bidding Procedures Motion") [Dkt. 95]. The Bidding Procedures Motion initially did not reference any of the Lexon Bonds, and it did not mention the treatment of the Lexon Bonds should certain assets which the Lexon Bonds cover be sold. After negotiation with Debtors' counsel, Debtors and Lexon agreed to language to be included in the Order that approved the Bidding Procedures Motion which addressed the Lexon Bonds appropriately. *See* Dkt. 133 at §5 titled "Bonding Obligations."

83073482v.2

14. The Sale Motion seeks to sell certain Oil and Gas Interests to Newco Energy Resources, LLC ("NewCo") for $300,000. Neither the Sale Motion nor the APA contains any description or language that indicates which bonds would need to be replaced or if the sale actually seeks to sell all of the remaining assets of the Debtors' bankruptcy estates, which would mean the Lexon Bonds must be replaced.

15. In conjunction with the Sale Motion, the Trustee also filed the *Motion of Ronald Ingalls, Chapter 7 Trustee to Pay Bond Premiums* (the "Bond Premium Motion") [Dkt. 410]. The Bond Premium Motion seeks to pay Smith-Manus for past due premiums on 25 of the 36 outstanding Lexon Bonds in the amount of $9,231.00 through July 2020, and to continue to pay ongoing premiums. The Trustee acknowledges the payment of the Lexon Bond premiums are a necessary expense for the preservation of the Debtors' bankruptcy estate.

16. Based on the Sale Motion and Bond Premium Motion, it appears the Trustee is attempting to cure the arrearages of approximately 25 Lexon Bonds prior to the sale to NewCo through the Asset Purchase Agreement. The remaining 11 bonds have premium renewals at various times over the next few months. The 36 Lexon Bonds have a total penal sum in the amount of approximately $734,131.00. In any sale, the buyer should be forced to purchase all of the assets of the Debtors and, in doing so, be made to replace all of the outstanding Lexon Bonds by the time of the closing of the sale. A sale of less than 100% of the assets would leave the bankruptcy estate without adequate assets to complete the plugging and abandonment and decommissioning required by 28 U.S.C. § 959(b).

17. While the Debtors and Trustee have acknowledged the importance of the Lexon Bonds and how they must be specifically treated, as evidenced by the inclusion of the agreed-

4

upon language in the Bidding Procedures Order as well as the Trustee's assertions in the Bond Premium Motion, the Trustee has failed to reference how the Lexon Bonds are to be treated in the Asset Purchase Agreement or Sale Motion. The Trustee's failure to specify how the Lexon Bonds will be treated in the Asset Purchase Agreement is similar to the Debtors' failure to specify the treatment of the Lexon Bonds under the Disclosure Statement and Plan (to which Lexon also objected). *See Objection and Reservation of rights of Lexon Insurance Co. to the Disclosure Statement of the Debtors* [Dkt. 299].

## ARGUMENT

### A. Possible Environmental Issues

18.     As referenced above, the Sale Motion seeks to only sell a portion of the Debtors' assets, and appears to exclude, or otherwise abandon, assets covered by at least 11 of the Lexon Bonds. Based on the above, the Debtors' estates may be left without the capabilities to perform their environmental obligations in violation of the mandate of *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494 (1986) ("*Midlantic*"), which specifically prohibits debtors from using the bankruptcy process to avoid such obligations. In addition, the abandonment of the assets not being sold under the Asset Purchase Agreement, could violate the Supreme Court mandate in *Ohio v. Kovacs ("Kovacs"),* which held that a trustee in bankruptcy has an obligation to comply with environmental laws. *See* 469 U.S. 274, 285 (1985).

19.     Section 554 of the Bankruptcy Code allows a trustee to abandon property "that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). In *Midlantic,* a trustee in a converted Chapter 7 case sought to use § 554 to abandon

83073482v.2

properties containing contaminated oil in violation of New York and New Jersey environmental laws. *Id*. at 496-99. The debtor had stored over 70,000 gallons of contaminated oil in deteriorating and leaking containers. After unsuccessfully trying to sell the property upon which the containers were located, the Chapter 7 trustee notified the bankruptcy court and creditors that he intended to abandon the property under 11 U.S.C. § 554(a). The Supreme Court refused to allow the trustee to abandon the property, holding that although Congress did not include an explicit exception to a trustee's abandonment power in § 554, it nonetheless intended to codify pre-Code laws which establish that a trustee cannot "exercise his abandonment power in violation of certain state and federal laws." 474 U.S. at 501. The Court reasoned that Congress did not intend the Bankruptcy Code to displace all other applicable law because it also enacted 28 U.S.C. § 959(b), which requires debtors to manage their property in accordance with all state laws.[2] *Id*. at 502. Because a debtor cannot manage its property in violation of state laws, the Court held "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." 474 U.S. at 507. While the Supreme Court characterized its holding as a "narrow one," only applying if abandonment violates a law "reasonably calculated to protect the public health or safety from eminent and identifiable harm," it nevertheless held that a bankruptcy court does not have the power to authorize abandonment "without formulating conditions that will adequately protect the public's health and safety." *Id*. at 516.

---

[2] Section 959(b) provides that "[A] trustee … including a debtor in possession, shall manage and operate the property in his possession … according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do so if in possession thereof."

6

20.     In reaching this conclusion, the Supreme Court cited its own decision from the preceding term, *Ohio v. Kovacs*, 469 U.S. 274, 285 (1985), wherein it had held that a trustee must comply with environmental laws and "may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions." *See Midlantic*, 474 U.S. at 502.

21.     If any of the assets covered by the Lexon Bonds are to be excluded from the Asset Purchase Agreement, and otherwise abandoned, the Trustee must demonstrate that the Debtors' estates have sufficient funds and assets remaining after the sale to satisfy the reclamation obligations.

22.     Furthermore, it appears unlikely the Trustee will have sufficient funding to satisfy his environmental obligations for the assets not sold under the Asset Purchase Agreement, because the sale of the Oil and Gas Interests to NewCo is only for $300,000, and the penal sum of all the Lexon Bonds is approximately $714,131.00.  The aforementioned would render the Debtors and Trustee in violation of their obligations under *Midlantic and Kovacs*.

**B.  Treatment of the Lexon Bonds**

23.     As referenced in the Sale Motion, the Trustee is attempting to sell certain Oil and Gas Interests to Newco.  A review of the Asset Purchase Agreement and Sale Motion, read in conjunction with the Bond Premium Motion, appears to indicate that the Trustee is attempting to sell or assign to NewCo 25 of the Lexon Bonds which cover the Oil and Gas Interests.  However, the intention of the parties remains unclear as there is no reference to the Lexon Bonds anywhere in the Sale Motion or Asset Purchase Agreement.

7

83073482v.2

24.     Paragraph 8 of the Asset Purchase Agreement does reference that NewCo "is also taking the Assets subject to all state and federal regulations and obligations arising from ownership of the assets, including but not limited to plugging liabilities."

25.     To the extent the Asset Purchase Agreement contemplates assignment or assumption of certain of the Lexon Bonds as part of the Oil and Gas Interests, or by another other provision contained in the Asset Purchase Agreement, Lexon objects.

26.     The Oil and Gas Interests contemplated being sold under the Asset Purchase Agreement require financial accommodations to certain Obligees, such as a surety bond or the posting of collateral.  Not contemplated under the Asset Purchase Agreement is the requirement that NewCo must demonstrate an ability to obtain the necessary bonds associated with the purchase of the Oil and Gas Interests, or provide sufficient proof that the bonds—specifically the Lexon Bonds—can be replaced, in order for the sale of the Oil and Gas Interests to effectively be successful.

27.     The Lexon Bonds are not executory contracts which can be assumed or assigned at the sole discretion of the Debtors, or at the discretion of the Trustee.  The Lexon Bonds cannot be transferred, sold, assumed, and/or assigned, as surety bonds are not executory contracts. *See In re James River Coal Co.*, 2006 WL 2548456 (Bankr. M.D. Tenn. 2006); *In re All Phase Electrical Contracting, Inc.*, 409 B.R. 272, 275 (Bankr. D. Conn. 2009).  Because the Lexon Bonds are specific to the individual Debtor named as principal on each bond and are financial accommodations, they cannot be transferred to the extent any such transfer may be contemplated under the Sale Motion or Asset Purchase Agreement.

8

28.     Although the Bankruptcy Code does not define "financial accommodation," courts have held that the obligation to pay money on the obligation of another, such as the surety bonds here, is a financial accommodation. *See, e.g., In re Adana Mortg. Bankers, Inc.*, 12 B.R. 977, 987 (Bankr. N.D. Ga. 1980).

29.     Section 365(c)(2) and Section 365(e)(2)(B) of the Bankruptcy Code prohibit the assumption of financial accommodations, such as the Lexon Bonds, by a debtor in bankruptcy. *See In re Thomas B. Hamilton Corp.*, 969 F.2d 1013, 1019 (11th Cir. 1992); *In re Wegner Farms*, 49 B.R. 440, 444 (Bankr. N.D. Iowa 1985) (in relation to surety bonds as financial accommodations only); *In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990).

30.     The relationship of the surety with its principal is based upon extensive underwriting and the issuance of the bonds is based upon the totality of the financial picture of the principal(s) when the bonds are issued.  As a result, if the Oil and Gas Interests to be sold include assets covered by the Lexon Bonds, NewCo must: (a) replace the Lexon Bonds, or (b) make other arrangements acceptable to Lexon (in Lexon's sole discretion) to continue with the Lexon Bonds, and post such collateral, or other financial assurances, as are deemed necessary by Lexon, to ensure compliance with applicable law, permits, and leases.

31.     Lexon will deem its Objection resolved as to the Sale Motion if the following language is included in any order approving the Sale Motion:

**Reservation of Rights for Sureties**. Trustee has indicated that buyer is purchasing all of the assets of the debtor including all of its real property and all of the permits associated with the debtors assets.  Trustee has further assured Lexon Insurance Company, (the

9

83073482v.2

"Surety") that as part of the sales transaction the buyer has agreed to replace all outstanding bonds of the debtor by the time of the closing of the sale transaction. Surety has issued commercial surety bonds on behalf of the Debtors relating to certain Purchased Assets, and the Debtors' business (collectively, the "Existing Surety Bonds,") and Debtors have entered into, or are potentially otherwise liable under, certain indemnity agreements and/or related agreements with the Surety (collectively, the "Existing Indemnity Agreements"). Notwithstanding anything to the contrary in the Order or the Asset Purchase Agreement, (i) the Trustee and the Surety reserve all rights and defenses with respect to the Existing Indemnity Agreements; (ii) nothing shall permit the transfer of any right to the Purchaser or alter, limit, modify, release, discharge, preclude, or enjoin any obligation of the Debtors to any Surety or under the Existing Surety Bonds or the Existing Indemnity Agreements; (iii) nothing herein shall be deemed to provide any Surety's consent to the involuntary substitution of any principal under any Existing Surety Bond; (iv) nothing shall be construed to authorize or permit the assumption and/or assignment of any Existing Surety Bond, or any Existing Indemnity Agreement, (v) each Existing Surety Bond shall be replaced by the Purchaser by the time of the closing of the sale transaction (collectively, the "Replacement Surety Bonds"), (vi) nothing under this Sale Order or the Asset Purchase Agreement shall obligate any Surety to issue any Replacement Surety Bond to the Purchaser, and (vii) Trustee has agreed, subject to the Court's authorization by separate motion, to cure any delinquent premium costs and Loss Adjustment Expenses as set forth in the Existing Indemnity Agreements and Bonds that are or become due until termination or replacement by the buyer.

10

83073482v.2

## RESERVATION OF RIGHTS

32.     Nothing herein shall be considered a waiver of any rights or claims that Lexon might have against the Debtors, their subsidiaries and affiliates.   The submission of this Objection by Lexon is not intended as, and shall not be construed as:

a.     Lexon's admission of any liability or waiver of any defenses or limitations of any rights of Lexon with respect to any claims against one or more of the Lexon Bonds or under the Indemnity Agreement;

b.     Lexon's waiver or release of any rights to exoneration it may have against any one with respect to its obligations pursuant to the Lexon Bonds;

c.     Lexon's waiver or release of its right to be subrogated to the rights of one or more parties paid pursuant to the Lexon Bonds;

d.     An election of remedies; or

e.     Consent to the determination of Debtors' liability to Lexon by a particular Court, including, without limitations, the Bankruptcy Court.

## CONCLUSION

33.     For the foregoing reasons, Lexon respectfully requests that this Court sustain Lexon's Objection to the Sale Motion, and grant such other and further relief as is just and proper.

83073482v.2

Dated: June 18, 2020.                    Respectfully submitted,

                                        By: _/s/ W. Steven Bryant_____
                                        W. Steven Bryant
                                        Texas Bar No. 24027413
                                        Federal I.D. No. 32913
                                        LOCKE LORD LLP
                                        600 Congress Ave., Suite 2200
                                        Austin, Texas 78701
                                        Phone: (512) 305-4726
                                        Fax: (512) 305 4800
                                        Email address: sbryant@lockelord.com

                                        -and-

                                        Philip G. Eisenberg (*admitted pro hac vice*)
                                        Texas Bar No. 24033923
                                        LOCKE LORD LLP
                                        600 Travis Street, Suite 2800
                                        Houston, Texas 77002
                                        Phone: (713) 226-1304
                                        Fax: (713) 229-2536
                                        Email address: peisenberg@lockelord.com

                                        -and-

                                        Lee E. Woodard (*admitted pro hac vice*)
                                        New York Bar No. 1845304
                                        HARRIS BEACH PLLC
                                        333 W. Washington Street, Ste. 200
                                        Syracuse, New York 13202
                                        Phone: (315) 423-7100
                                        Fax: (315) 422-9331
                                        Email address: LWoodard@HarrisBeach.com.

                                        **COUNSEL FOR LEXON INSURANCE COMPANY**

83073482v.2

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing *Objection* was served via Electronic Case Filing ("ECF") on June 18, 2020 on all parties who receive service in these Bankruptcy Cases via ECF and on the parties on the attached Master Service List (dated June 8, 2020) either by ECF service on June 18, 2020 or on June 19, 2020 by first class United States regular mail, postage prepaid, for those parties who do not receive ECF service.

*/s/  W. Steven Bryant*
W. Steven Bryant

83073482v.2